# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

In Re: CV Sciences, Inc. Securities Litigation

Case No.: 2:18-cv-01602-JAD-BNW

**Order Denying Defendants' Motion to Dismiss and Granting in Part and Denying in Part Lead Plaintiff's Motion to Strike**

[ECF Nos. 33, 44]

This is a securities-fraud-class-action lawsuit against CV Sciences, Inc. and its current and former officers Michael Mona, Jr., Michael Mona, III, and Joseph D. Dowling. CV Sciences is a life-science company that specializes in cannabidiols (CBD).[1] CV Sciences' pharmaceutical division developed a treatment utilizing CBD for smokeless tobacco use and addiction.[2] The company filed a patent application for the product with the United States Patent and Trade Office (USPTO),[3] and the defendants subsequently made numerous public statements that the product was "patent-pending," "patent-protectable," and "proprietary."[4] But CV Sciences did not reveal that USPTO had rejected its patent application twice—including a "Final Rejection" on grounds that the invention was obvious.[5] After non-party Citron Research shared news of the rejections on Twitter, CV Sciences' stock price dropped 54.24%.[6]

---

[1] ECF No. 30 at ¶ 33.

[2] *Id.* at ¶ 35.

[3] *Id.* at ¶ 37.

[4] *Id.* at ¶¶ 49–79.

[5] *Id.* at ¶¶ 41, 44. The Patent Trial and Appeal Board subsequently affirmed the USPTO's rejection of the patent application. ECF No. 59-1. The parties submitted supplemental briefs "analyzing that authority and its relevance to the issues presented by the pending motion to dismiss." ECF Nos. 63, 64, 66.

[6] ECF No. 30 at ¶¶ 82–83.

Lead Plaintiff Richard Ina and others filed suit, alleging that the defendants violated section 10(b) of the Securities Exchange Act of 1934 (the Exchange Act), 15 U.S.C. § 78j(b), and Securities and Exchange Commission (SEC) Rule 10b-5, 17 C.F.R. § 240.10b-5, by describing the product as "patent-pending," "patent-protectable," and "proprietary" in the wake of the rejections. Ina also asserts control-person liability against the individual defendants under section 20(b) of the Exchange Act. The defendants move to dismiss Ina's amended complaint on numerous grounds. Ina moves to strike certain exhibits to the defendants' motion to dismiss. I grant the motion to strike in part. But I deny the motion to dismiss because the briefing on the motion makes clear that the veracity of the defendants' claims that their product was "patent-pending," "patent-protectable," and "proprietary" cannot be determined as a matter of law on a motion to dismiss, and the defendants' remaining arguments do not merit dismissal.

**Discussion**

**I.  Motion to strike (ECF No. 44)**

Ina moves to strike eighteen of the nineteen exhibits the defendants filed in support of their motion to dismiss, all references to the exhibits in the motion to dismiss, and "unsworn attorney testimony" in the motion to dismiss.[7] The defendants respond that all of the challenged exhibits are subject to judicial notice or incorporation by reference into Ina's amended complaint.[8]

Courts "must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" while assessing the sufficiency of securities-

---

[7] ECF No. 44.

[8] ECF No. 46.

fraud allegations like Ina's.⁹  The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."¹⁰  The doctrine applies when (1) "the complaint necessarily relies upon the document" or (2) "the contents of the document are alleged in the complaint, the document's authenticity is not in question," and the document's relevance is not in dispute.¹¹  "But the mere mention of the existence of a document is insufficient to incorporate the contents of a document."¹²  Additionally, under Federal Rule of Evidence 201, courts may take judicial notice of a fact if it is "not subject to reasonable dispute," meaning that it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."¹³

Exhibits A through D include: (1) a version of Citron Research's Twitter page that does not include the August 20, 2018, Tweet alleged in the complaint and (2) Wikipedia and New York Times articles about Citron Research's founder and Citron Research's web page, which are linked from the Twitter page.¹⁴  Incorporation by reference of the Twitter page, which does not include the Tweet referenced in the complaint, is not appropriate because it would not serve the doctrine's purpose of ensuring appropriate context for documents alleged in the complaint.¹⁵  I

---

⁹ *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

¹⁰ *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

¹¹ *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

¹² *Id.*

¹³ Fed. R. Evid. 201(b).

¹⁴ ECF Nos. 33-2–33-5.

¹⁵ In *Knievel v. ESPN*, the Ninth Circuit affirmed incorporation by reference of web pages providing context to an image and caption that the plaintiff alleged was defamatory.  393 F.3d 1068, 1076 (9th Cir. 2005).  Unlike in that case, the Twitter page here provides no context to the

will not incorporate web pages and articles linked from that Twitter page into the complaint because such an extension of the doctrine would permit incorporation of, among other things, the *New York Times* wedding section into a complaint that quotes a *New York Times* article. And although these web pages and articles may be judicially noticed to "indicate what was in the public realm at the time,"[16] the defendants use them in their motion to dismiss to support factual assertions.[17] So I grant the motion to strike Exhibits A–D and references to these exhibits in the motion to dismiss.

Exhibit E is a USPTO web page showing the status of CV Sciences' patent application.[18] This document is incorporated by reference because it provides necessary context to the amended complaint's citations to the same website for selective events in the patent application history. And this USPTO patent application web site is also subject to judicial notice.[19] So I deny the motion to strike Exhibit E.

Exhibits F through R are press releases, a presentation, an investor-call transcript, and documents filed with the SEC containing the statements that Ina alleges were false and

---

Tweet alleged in the complaint, which is not included in Exhibit B. ECF No. 33-3. And the Tweet is not the center of Ina's misrepresentation claims; CV Sciences' own statements are.

[16] *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quotation omitted).

[17] *See, e.g.*, ECF No. 33 at 4 ("For this behavior, the New York Times dubbed Left the 'Bounty Hunter of Wall Street' and described how he 'gets rich' through his activities. This is exactly what Citron did in this case, posting a highly inflammatory tweet for no other purpose than to terrify investors into panic-selling.").

[18] ECF No. 33-6.

[19] *See, e.g.*, *CyWee Grp., Ltd. v. LG Elecs., Inc.*, 2018 WL 3007899, at *1 n.2 (S.D. Cal. June 15 2018) ("The court takes judicial notice of the information available from a public search of the United States Patent and Trademark Office ('USPTO') website regarding the patents-in-suit.") (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)).

4

misleading.[20]  These documents are incorporated by reference into the complaint because they are the basis of Ina's claims.[21]  They do not "merely create a defense"[22] because, in addition to the cautionary language cited by defendants in their safe harbor defense, they contain the allegedly false or misleading statements at issue in this case.  So I deny the motion to strike Exhibits F–R.[23]

As to Ina's remaining arguments, I address the motion to strike citations to a law review article and patent treatise below.  I deny the motion to strike "unsworn attorney testimony" in the motion to dismiss because I find that these "factual representations" consist of argument or are based on exhibits to the motion to dismiss.  And I deny Ina's request to convert the motion to dismiss into a motion for summary judgment because courts must consider documents subject to judicial notice or incorporation by reference while assessing the sufficiency of securities-fraud allegations.[24]

## II. Motion to dismiss (ECF No. 44)

Section 10(b) of the Exchange Act prohibits the use of "any manipulative or deceptive device or contrivance" related to the purchase or sale of securities when the use violates the

---

[20] ECF Nos. 33-7–33-19.

[21] *See Khoja*, 899 F.3d at 1002–03.

[22] *Id.*

[23] Ina also challenges Exhibit I on grounds that it is a transcript published by Seeking Alpha, while the amended complaint cites the Bloomberg, L.P. transcript of the same call.  ECF No. 44 at 11–12.  *Khoja*, 899 F.3d at 1007, is distinguishable.  In that case, it was an abuse of discretion to incorporate by reference a press release that "happen[ed] to report" facts alleged in the complaint.  *Id.*  Here, the amended complaint alleges the content of the call transcript—the defendants' statements during the call.  So I find that the Seeking Alpha transcript is incorporated by reference into the complaint.

[24] *See Tellabs*, 551 U.S. at 322.

regulations promulgated by the SEC.[25] Under SEC Rule 10b-5, it is unlawful for any person "[t]o make any untrue statement of fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."[26] "To recover damages for violations of section 10(b) and Rule 10b-5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[27]

At the pleading stage, a complaint alleging violations of Section 10(b) of the Exchange Act and SEC Rule 10b–5 must meet both the heightened pleading requirements for fraud claims under Federal Rule of Civil Procedure 9(b) and the "exacting pleading requirements of the Private Securities Litigation Reform Act" (PSLRA), 15 U.S.C. § 78u-4(b)(2)(A).[28] Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud,"[29] including "including the who, what, when, where, and how of the misconduct charged."[30] The PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[31]

---

[25] 15 U.S.C. § 78j(b).
[26] 17 C.F.R. § 240.10b-5(b).
[27] *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).
[28] *Id.*
[29] Fed. R. Civ. P. 9(b).
[30] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).
[31] 15 U.S.C. § 78u-4(b)(2)(A).

### A. Material misrepresentations

Ina must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" to adequately plead material misrepresentation.[32] "Although determining materiality in securities fraud cases should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."[33] "Rule 10b–5 [prohibits] only misleading and untrue statements, not statements that are incomplete . . . . Often, a statement will not mislead even if it is incomplete or does not include all relevant facts."[34] "Instead, 'a statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.'"[35]

With respect to opinion statements, when a plaintiff relies on a theory that such a statement is a material misrepresentation, "the plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue."[36] "[W]hen a plaintiff relies on a theory of omission, the plaintiff must allege 'facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.'"[37] However, a "mildly optimistic, subjective

---

[32] 15 U.S.C. § 78u–4(b)(1).

[33] *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (internal citations and quotations omitted).

[34] *Id.* at 1109 (9th Cir. 2010) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

[35] *Id.* (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)).

[36] *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615–16 (9th Cir. 2017) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015)).

[37] *Id.* at 616 (quoting *Omnicare*, 135 S. Ct. at 1332) (alterations in original).

7

assessment hardly amounts to a securities violation," so courts must distinguish material misrepresentations from "puffery."[38] "Statements by a company that are capable of objective verification are not puffery and can constitute material misrepresentations."[39]

The defendants argue that their challenged statements were neither false nor material because the patent application process often extends beyond a final rejection by the USPTO.[40] Additionally, the defendants argue that describing its product as "proprietary" was non-actionable puffery.[41] Ina responds that after receiving the USPTO rejections, defendants' characterizations of the product as "patent-pending" were materially misleading statements of fact and their claims that the product was "patent-protectable" and "proprietary" were misleading opinions.

The issue boils down to whether a reasonable investor would believe that a patent remains pending after a final rejection but before potential appeals have been exhausted. If so, then the defendants' statements that their product was "patent-pending," "patent-protectable," and "proprietary" were not misleading under the standards outlined above. The parties primarily rely on statistical analysis of the patent-application process to resolve the issue: (1) Ina alleges that a "comprehensive study from 1996 to 2005 found that only 41.4% of USPTO decisions that finally reject a patent are overturned by the Patent Trial and Appeal Board" and that "the percentage of USPTO decisions that finally rejected patent applications that were overturned by the Patent Trial and Appeal Board [subsequently] decreased to 39.3% (2013), 31.3% (2014),

---

[38] *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014).
[39] *Id.* (quotation omitted).
[40] ECF No. 33 at 6–12.
[41] *Id.* at 10–11.

8

28.9% (2015), 28.6% (2016), 29.5% (2017), and 28.3% (2018);"[42] while (2) the defendants cite a law review article concluding that "more than half of those applications that received a final rejection [ ] ultimately resulted in patents" after amendments and appeals.[43] But the parties' reliance on dueling statistics makes it clear that I cannot resolve this issue as a matter of law on a motion to dismiss.

The U.S. District Court for the Southern District of New York's decision in *Alpha Capital Anstalt v. New Generation Biofuels, Inc.* is instructive.[44] In that case, the plaintiff alleged that the defendants made statements discussing their "portfolio of patented and patent-pending technology" despite having received negative feedback on their patent claims in "[f]oreign [p]atent [r]eports."[45] Even though these preliminary reports were seemingly less conclusive than the USPTO's final rejection here, the court denied the motion to dismiss because several factual questions remained, including the significance of the reports.[46] In that case, the court had the benefit of expert declarations on the patent-application process.[47] So, in this context, determining whether the challenged statements were materially misleading requires discovery and expert testimony, which exceeds the scope of a proper dismissal inquiry.[48] For

---

[42] ECF No. 30 ¶ 28.

[43] ECF No. 33 at 14–15 (quoting Mark A. Lemley & Bhaven Sampat, Examining Patent Examination, 2010 Stan. Tech. L. Rev. 2, 6 (2010)) (alteration in original).

[44] *Alpha Capital Anstalt v. New Generation Biofuels, Inc.*, No. 13-CV-5586 VEC, 2014 WL 6466994 (S.D.N.Y. Nov. 18, 2014).

[45] *Id.* at *2, 4.

[46] *Id.* at *8–9.

[47] *Id.*

[48] Because the law review article and patent treatise cited to by the defendants only buttress my conclusion that this issue cannot be decided as a matter of law on a motion to dismiss, I deny as moot Ina's motion to strike those citations.

9

purposes of this motion, it is enough that Ina identifies the misleading statements with particularity and alleges why they are misleading, meeting the requirements of Rule 9(b) and the PSLRA. I therefore deny the motion to dismiss on this ground.[49]

### B.     Truth-on-the-market defense

The defendants argue that the truth-on-the-market defense bars Ina's claims because the patent rejections were posted on the USPTO's website.[50] Ina responds that a reasonable investor would not have known the information, the defendants' misstatements counterbalanced the information, and the stock drop after the Citron Research Tweet undermines the defense.[51]

The Ninth Circuit has held that the truth-on-the-market defense excuses a "failure to disclose material information . . . where that information has been made credibly available to the market by other sources."[52] However, "any material information [that] insiders fail to disclose must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations."[53] Accordingly, "the truth-on-the-market defense is intensely fact-specific, so courts rarely dismiss a complaint on this basis."[54]

---

[49] The defendants also argue that the statement that their product was "proprietary" was non-actionable puffery. Although this claim may be non-actionable on its own, the statement was made in the patent-application context, making it capable of objective verification. *See Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) ("[T]he Court may not assess the statements listed in the FAC in a vacuum, plucking the statements out of their context to determine whether the words, taken per se, are sufficiently vague so as to constitute puffery, but rather will examine the entire statement and its circumstances to determine if it is actionable.") (quotations omitted)). So I deny the motion to dismiss on this ground as well.

[50] ECF No. 33 at 12–13.

[51] ECF No. 45 at 15–16.

[52] *In re Apple Computer Sec. Lit.*, 886 F.2d 1109, 1115 (9th Cir. 1989).

[53] *Id.* at 1116.

[54] *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008).

Ina alleges that the defendants repeatedly reassured investors over an extended period of time that their product was "patent-pending," "patent-protectable," and "proprietary." I cannot conclude at this time that the publication of the patent rejections on the USPTO website were sufficient to counter-balance the impression created by these representations. So I deny the motion to dismiss on this ground.

**C.     Scienter**

The defendants also content that Ina fails to adequately plead scienter because his theory that the individual defendants stood to gain from a stock bonus is insufficient.[55] Ina responds that his allegations regarding the defendants' knowledge or reckless disregard of the rejections, the core-operations doctrine, allegations of past wrongdoing by Mona Jr., and certain defendants' signed Sarbanes-Oxley Act certifications are sufficient to establish scienter.[56]

Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."[57] The "required state of mind is a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness."[58] "[D]eliberate recklessness is an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[59] To assess whether a plaintiff's allegations meet this standard, courts "must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as

---

[55] ECF No. 33 at 13–17.

[56] ECF No. 45 at 18–26.

[57] 15 U.S.C. § 78u-4(b)(2)(A).

[58] *In re Quality Sys.*, 865 F.3d at 1144 (quotation omitted).

[59] *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (quotation omitted).

11

strong as any opposing inference?"[60] The absence of an allegation that the defendants had a pecuniary motive to commit fraud is not fatal.[61]

Most importantly, the defendants concede in reply that they had knowledge of the patent rejections and that the core-operations doctrine, which permits the court to infer "that facts critical to a business's core operations . . . are known to a company's key officers," applies.[62] So the defendants knew that the patent application had been rejected twice—including with a "final rejection" on grounds that the product was obvious—when they made statements that the product was "patent-pending," "patent-protectable," and "proprietary." Because plaintiff alleges with requisite particularity that these statements were materially misleading and, as discussed above, I cannot determine otherwise as a matter of law on a motion to dismiss, defendants' knowledge of the rejections constitutes, at the very least, deliberate recklessness as to whether the subsequent statements would mislead investors. The defendants' knowledge of the rejections thus raises a strong inference of scienter on its own, and it is at least as strong as any opposing inference that the defendants lacked the requisite state of mind. So I do not address the other allegations supporting scienter and deny the motion to dismiss on this ground.

**D. Loss causation**

To adequately plead loss causation, the plaintiffs "must allege that the defendant's share price fell significantly after the truth became known."[63] "Because loss causation is simply a variant of proximate cause, the ultimate issue is whether the defendant's misstatement, as

---

[60] *Tellabs*, 551 U.S. at 326.

[61] *Id.* at 325.

[62] ECF No. 48 at 10 & n.5; *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008).

[63] *Metzler Investments GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (quotation omitted).

12

opposed to some other fact, foreseeably caused the plaintiff's loss."[64] Ina is, of course, not required to prove loss causation at the pleading stage, but he "must properly allege it."[65] "[B]asic economic principles preclude dismissing a complaint" on grounds that the stock price recovered after falling significantly because the rebound can often be explained by external events.[66]

Ina alleges that CV Sciences' share price fell significantly—52.4%—in the hours after the Citron Research Tweet revealing that the patent application had been twice rejected.[67] Because the Tweet revealed the same information withheld from the allegedly misleading statements, Ina sufficiently alleges that the defendants' fraudulent conduct proximately caused his loss. And although the stock price rebounded in subsequent days, dismissal on those grounds is not appropriate because other events could have caused that recovery. So I deny the motion to dismiss on loss-causation grounds.

### E. PSLRA damages limitation

The defendants next argue that because CV Sciences' stock price recovered after the initial fall, class-action plaintiffs who purchased shares on or prior to August 8, 2018, cannot establish loss causation under a damages-limitation provision in the PSLRA.[68] Ina responds that

---

[64] *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (quotation omitted).

[65] *Metzler*, 540 F.3d at 1062.

[66] *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 985 (N.D. Cal. 2015) (citing *Acticon AG v. China N.E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 36 (2d Cir. 2012)).

[67] ECF No. 30 at ¶¶ 82–83.

[68] ECF No. 33 at 19–20.

13

the defendants confuse loss causation for damages and that dismissal on these grounds is inappropriate.[69]

15 U.S.C. § 78u-4(e) provides that "the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price . . . and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market."[70] Under this provision, "if the mean trading price of a security during the 90–day period following the correction is greater than the price at which the plaintiff purchased his stock then that plaintiff would recover nothing under the PSLRA's limitation on damages."[71]

The parties have not identified any authority applying this damages-limitation provision on a motion to dismiss a Section 10(b) claim. Application of 15 U.S.C. § 78u-4(e) is more appropriate on a class-certification or summary-judgment motion, when I may have the benefit of expert testimony on damages.[72] So I deny without prejudice the motion to dismiss on this ground.

### F. Forward-looking statements

The PSLRA contains a safe harbor provision that "exempts, under certain circumstances, a forward-looking statement, which is 'any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or

---

[69] ECF No. 45 at 28–29.

[70] 15 U.S.C. § 78u-4(e)

[71] *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 461 (9th Cir. 2000), as amended (June 19, 2000).

[72] *See In re Commc'ns Sys., Inc.*, 2003 WL 21383824, at *3 (N.D. Cal. Feb. 24, 2003) ("[T]hese issues very well may need to be the subject of expert testimony and no such testimony is presently before the court.").

(4) the assumptions underlying or related to any of these issues.'"[73]  "But the safe harbor is not designed to protect companies and their officials when they knowingly make a materially false or misleading statement about current or past facts."[74]  "The safe harbor applies if the forward-looking statement is . . . identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement . . . ."[75]

Although the statements at issue were accompanied by appropriate cautionary language, none of these statements were forward-looking.  The claims that the product was "patent-pending" refer to current facts.  The statements that the product was "patent-protectable" and "proprietary" may appear forward-looking on their face, but Ina alleges that the contingency these statements refer to was already resolved when these statements were made—by the patent rejections.  So these statements also refer to current or past events, and I deny the motion to dismiss on this ground as well.

**G.     Section 20(a)**

Section 20(a) of the PSLRA establishes joint and several liability for controlling persons who aid and abet securities violations.[76]  To establish control-person liability, the plaintiffs must allege "a primary violation of federal securities law" and that "the defendant exercised actual

---

[73] *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) (quoting *No. 84 Emp'r–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003)).

[74] *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1142.

[75] *Police Ret. Sys. of St. Louis*, 759 F.3d at 1058 (quotations and citations omitted).

[76] 15 U.S.C. § 78t(a).

15

power or control over the primary violator."[77]  The defendants only move to dismiss on grounds that Ina failed to allege a primary violation of federal securities law.[78]  Because I find that Ina sufficiently alleges a violation of federal securities law, I deny the motion to dismiss on this ground as well.

**H.     Request to strike**

In their motion to dismiss, the defendants request to strike allegations in the plaintiff's amended complaint describing Mona, Jr. as a "serial fraudster" and detailing Mona Jr.'s past wrongdoing.[79]  These include allegations that: (1) Mona, Jr. was denied a gaming license due to accounting irregularities, associations with "corrupt telemarketers," and an arrest for drunkenness and disturbing the peace; (2) Mona, Jr. defrauded a party to a land transaction; (3) the SEC charged Mona, Jr. and CV Sciences' predecessor company with securities fraud prior to making the statements at issue in this case; and (4) Mona, Jr. was named in a subsequent private securities-fraud claim that survived dismissal.[80]  The SEC action concluded in a consent judgment under the terms of which Mona Jr. did not admit the allegations[81] but agreed to a prohibition from serving as an officer or director of a publicly-held company.[82]  CV Sciences

---

[77] *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009).

[78] ECF No. 33 at 23.

[79] ECF No. 33 at 23–25; ECF No. 30 at ¶¶ 98–102.  This district's local rules require the defendants to file a separate motion for "[f]or each type of relief requested or purpose of the document."  L.R. IC 2-2(b).  Indeed, Ina appropriately filed his motion to strike in a separate document from his opposition to the motion to dismiss.  The defendants are advised to comply with this and all other local rules in the future.

[80] ECF No. 30 at ¶¶ 98–102.

[81] ECF No. 49.

[82] *Id.* at ¶ 101.

16

subsequently re-hired Mona Jr. as "Founder-Emeritus" and gave him a $70,000 raise.[83] Ina responds that the allegations are relevant because they confirm lack of mistake and that Mona Jr. had knowledge of his legal duties under Section 10(b) of the Exchange Act and SEC Rule 10(b)(5).[84]

Rule 12(f) of the Federal Rules of Civil Procedure allows courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[85] However, courts "disfavor motions to strike unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."[86] Allegations are "immaterial" if they have "no essential or important relationship to the claim for relief or the defenses being plead."[87] "Scandalous matters are allegations that unnecessarily reflect on the moral character of an individual or state anything in repulsive language that detracts from the dignity of the court, and include allegations that cast a cruelly derogatory light on a party or other person."[88]

The allegations regarding the denial of a gaming license and the fraudulent land-sale transaction are immaterial because they have no important relationship to Ina's claim for relief. However, I find that the defendants have not carried their burden to show that the prior securities-fraud allegations could have no bearing on the subject matter of this litigation. These allegations suggest that Mona Jr. was aware of CV Sciences' disclosure obligations and his lack

---

[83] *Id.*

[84] ECF No. 45 at 24–25.

[85] Fed. R. Civ. P. 12(f).

[86] *Dannenbring v. Wynn Las Vegas, LLC*, 907 F. Supp. 2d 1214, 1217 (D. Nev. Jan. 23, 2013).

[87] *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014).

[88] *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (quotations, citations, and alterations omitted).

of mistake in making misleading statements to investors, which are relevant to scienter. And they mirror Ina's allegations of the wrongdoing in this case, so they can hardly "detract from the dignity of the court." So, I grant the request to strike paragraphs 98 and 99 of the amended complaint but deny the request with respect to paragraphs 100 through 102.

**Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that the defendants' motion to dismiss **[ECF No. 33] is DENIED**.

**IT IS FURTHER ORDERED** that the defendants' request to strike certain allegations in Ina's amended complaint is **GRANTED in PART and DENIED in Part**. Paragraphs 98 and 99 are deemed stricken.

**IT IS FURTHER ORDERED** that Ina's motion to strike **[ECF No. 44]** is **GRANTED in PART and DENIED in PART**. Exhibits A–D are stricken.

Dated: December 10, 2019

_____
U.S. District Judge Jennifer A. Dorsey