Martin A. Muckleroy
State Bar #9634
**MUCKLEROY LUNT, LLC**
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Telephone: 702-907-0097
Facsimile: 702-938-4065
Email: martin@muckleroylunt.com

Katherine Lenahan (*pro hac vice*)
Email: klenahan@faruqilaw.com
Nina Varindani (*pro hac vice*)
Email: nvarindani@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Lead Plaintiff Richard Ina, Trustee for The Ina Family Trust*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: CV SCIENCES, INC. SECURITIES LITIGATION | Case No. 2:18-cv-01602-JAD-BNW  **STIPULATION OF SETTLEMENT** |
| This Document Relates to: All Actions | |

This Stipulation of Settlement, dated January 31, 2022 (the "Stipulation") in the above-captioned action (the "Action"), is entered into by and between: (i) Lead Plaintiff Richard Ina, as Trustee for the Ina Family Trust ("Lead Plaintiff" or "Ina"), on behalf of himself and each of the Class Members (as defined herein); (ii) defendants CV Sciences, Inc. ("CV Sciences", "CVSI", or the "Company"), Michael Mona, Jr., Joseph D. Dowling, and Michael Mona, III (collectively "Defendants"), by and through their respective counsel. This Stipulation is intended by Lead Plaintiff and Defendants (collectively, the "Parties") to fully, finally, and forever resolve, discharge, release, and settle the Released Claims, as defined below, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.   SUMMARY OF CLAIMS AND PROCEDURAL HISTORY

This Action began on August 24, 2018, when the initial class action complaint was filed in the United States District Court for the District of Nevada.  ECF No. 1.  On November 15, 2018, District Judge Jennifer A. Dorsey appointed Ina as Lead Plaintiff, Faruqi & Faruqi, LLP as Lead Counsel, and Muckleroy Lunt, LLC as Liaison Counsel.  ECF No. 21.  Ina filed an Amended Complaint ("AC") on January 4, 2019, naming as defendants CV Sciences; former Founder Emeritus, director, and Chief Executive Officer ("CEO") Michael Mona, Jr. ("Mona Jr."); CEO and director Joseph D. Dowling ("Dowling"); and former Chief Operating Officer ("COO") and director Michael Mona, III ("Mona III").  ECF No. 30.  The AC alleged that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder with relation to the Company's lead pharmaceutical product, CVSI-007.  *Id.* at ¶¶1, 3.  At various points in the litigation, Mona Jr. and Mona III (collectively, the "Mona Defendants" or the "Monas") and Dowling and CV Sciences (collectively, the "Company Defendants") were represented by separate counsel.

On March 5, 2019, Defendants filed a motion to dismiss the AC (the "MTD") (ECF Nos. 33-35) to which Lead Plaintiff responded on May 3, 2019.  ECF No. 45.  While the decision on the MTD was still pending and after obtaining leave from the Court (ECF Nos. 59-60, 63), Lead Plaintiff filed as supplemental authority to his opposition to the MTD ("MTD Opposition" or "MTD Opp.") a decision from the USTPO's Patent Trial and Appeal Board ("PTAB"), dated September 17, 2019, upholding the USPTO's final rejection of the CVSI-007 patent application.  ECF No. 64.

On December 10, 2019, the Court denied Defendants' MTD.  *See generally* ECF No. 70 ("MTD Order").

Thereafter, the Parties began to engage in discovery, and Lead Plaintiff filed a Second Amended Securities Class Action Complaint ("SAC").  ECF No. 127.

On May 19, 2020, the USPTO issued United States Patent No. 10,653,639, entitled "Pharmaceutical Formulations Containing Cannabidiol and Nicotine for Treating Smokeless Tobacco Addition," which the Company claims formally grants CV Sciences patent protection for CVSI-007.

During the discovery process, the Parties met and conferred frequently over discovery issues.  Lead Plaintiff filed two motions to compel, the first against the Mona Defendants in October 2020

(ECF No. 88), which was granted and denied in part (ECF Nos. 109, 111, 149), and the second against the Company Defendants in March 2021 (ECF No. 130), which was denied as moot after the parties informed the Court of their intent to engage in settlement negotiations (ECF No. 153).

On October 25, 2021, the Parties engaged in a mediation session before Jed D. Melnick, Esq., a highly experienced securities litigation mediator at JAMS.  The mediation was preceded by submission of confidential mediation statements and exhibits.  The Parties came to an agreement in principle during the mediation session and thereafter, engaged in negotiations regarding the complete terms of the settlement which are set forth in this Stipulation and which are subject to approval by the Court.

## II.   LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the claims asserted in this Action have merit and that the information developed to date supports his claims.  Lead Plaintiff and his counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and through appeals.

Lead Plaintiff and Lead Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this one, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiff and Lead Counsel are also mindful of the inherent problems of proof and the possible defenses to the securities law violations asserted in the Action.  Lead Plaintiff and Lead Counsel additionally considered the financial position of the Company and the information produced by Defendants through discovery and in connection with the mediation under the mediation confidentiality agreement.  Lead Plaintiff and Lead Counsel believe that the settlement set forth in this Stipulation confers substantial benefits upon the Class and is fair, reasonable, adequate, and in the best interests of Lead Plaintiff and the Class.

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims alleged by Lead Plaintiff and the Class in the Action.  Defendants expressly have denied and continue to deny all claims of liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged in the Action.  Defendants also have denied and continue to

deny, among other allegations, the allegations that Lead Plaintiff or the Class have suffered any damage, that the price of CV Sciences common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, allegations that Defendants' statements were misleading, or that Lead Plaintiff or the Class were harmed by the conduct alleged in the Action or that could have been alleged as part of the Action.  Defendants believe that the evidence developed to date supports their position that they acted properly at all times and that the Action is without merit. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

Nonetheless, Defendants have concluded that further conduct of the Action would be protracted and expensive, and that it is desirable that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Defendants have, therefore, determined that it is desirable and beneficial to them that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation.

**IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, without any concession by Lead Plaintiff that the Action lacks merit, and without any concession by Defendants of any liability or wrongdoing or lack of merit in their defenses, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for himself and the Class Members) and Defendants, by and through their respective counsel that, subject to the approval of the Court, the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

**1.    Definitions**

In addition to the terms that may be defined elsewhere in this Stipulation, the following terms as used in the Stipulation have the meanings specified below:

1.1    "Authorized Claimant" means a Class Member who submits a valid and timely Proof of Claim form that is approved for payment by the Claims Administrator or the Court.

1.2    "Claim" means the submission to be made by Class Members, on the Proof of Claim form attached hereto as Exhibit A-2, or as may be required by the Court.

1.3     "Claims Administrator" means Analytics Consulting LLC, the firm retained by Lead Counsel, subject to Court approval, which shall mail and publish the Notices, process Proofs of Claim, and distribute the Net Settlement Fund to Authorized Claimants.

1.4     "Class" means, for the purposes of settlement only, all Persons who purchased the common stock of CV Sciences in the United States or on the OTC between June 19, 2017 and August 20, 2018 at 1:21 p.m. EST, inclusive, and were allegedly damaged thereby.  Excluded from the Class are: (a) Defendants; (b) the officers and directors of the Company at all relevant times; (c) members of any Defendant's immediate families; (d) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (e) the legal representatives, heirs, agents, successors or assigns of such excluded Persons; (f) Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; (g) those who purchased CV Sciences common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) ("[I]t is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which §10(b) applies."); and (h) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

1.5     "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth in ¶1.4 of the Stipulation.

1.6     "Class Period" means the period between June 19, 2017 and prior to August 20, 2018 at 1:21 p.m. EST, inclusive.

1.7     "Defendants" mean CV Sciences, Michael Mona, Jr., Joseph D. Dowling, and Michael Mona, III.

1.8     "Effective Date," or the date upon which this settlement becomes "effective," means the date by which all of the events and conditions specified in ¶7.1 of this Stipulation have been met or have occurred or have been waived.

1.9     "Escrow Account" means the escrow account established by the Escrow Agent to receive the Settlement Amount.

1.10     "Escrow Agent" means Huntington National Bank or its successor.

1.11    "Excluded Claims" means the (i) derivative claims brought on behalf of CV Sciences, including *Depoti v. Dowling, et al.,* Docket No. A-18-782513-C (Nev. Dist. Ct. Oct. 10, 2018); *Francis v. Mona, Jr., et al.,* No. 2:18-cv-02284 (D. Nev. Nov. 30, 2018); *Tarangelo v. Mona, Jr., et al.,* Docket No. A-19-789153-B (Nev. Dist. Ct. Feb. 11, 2019); *Radcliffe v. Joseph Dowling, et al.,* Docket No. A-19-794377-B (Nev. Dist. Ct. May 7, 2019); *Berry v. Dowling, et al.,* Docket No. 3:20-cv-01072 (S.D. Cal. Jun. 11, 2020); *Menna v. Dowling, et al.,* Docket No. 37-2021-00019613-CU-SL-CTL (Cal. Super. Ct. Apr. 22, 2021), and any similar claims that may be filed or consolidated therewith; or (ii) any claims relating to the enforcement of the settlement.

1.12    "Final" means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review.  Without limitation, an order or Judgment becomes final when: (a) either no appeal therefrom has been filed and the time has passed for any notice of appeal to be timely filed therefrom; or (b) an appeal has been filed and either (i) the court of appeals has either affirmed the order or Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or Judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal.  For purposes of this paragraph, an "appeal" shall include any motion for reconsideration or rehearing or petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this settlement.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (i) attorneys' fees, costs, or expenses or awards to Lead Plaintiff; (ii) the Plan of Allocation (as submitted or subsequently modified); or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

1.13    "Final Approval Hearing" means the hearing scheduled by the Court to determine whether (i) settlement is fair, reasonable, and adequate; (ii) the Plan of Allocation is fair, reasonable,

and adequate; and (iii) Plaintiff's Counsel's request for an award of attorneys' fees and expenses, including any award to Lead Plaintiff for his costs and expenses, is reasonable.

1.14  "Judgment" means the Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.15  "Lead Counsel" means Faruqi & Faruqi, LLP, 685 Third Avenue, 26th Floor, New York, NY 10017.

1.16  "Lead Plaintiff" means Richard Ina, Trustee for The Ina Family Trust.

1.17  "Liaison Counsel" means Muckleroy Lunt, LLC.

1.18  "Net Settlement Fund" means the Settlement Fund less any attorneys' fees, expenses, and any award to Lead Plaintiff, provided for herein or approved by the Court, and less Notice and Administration Expenses, Taxes and Tax Expenses, and other Court-approved deductions.

1.19  "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-1.

1.20  "Notice and Administration Expenses" means reasonable costs and expenses incurred in connection with providing Notice to the Class, locating Class Members, soliciting claims, assisting with the submission of claims, processing Proof of Claim forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any.

1.21  "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.22  "Plaintiff's Counsel" means, collectively, Lead Counsel and Liaison Counsel.

1.23  "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  The Plan of Allocation is not part of the Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.24    "Preliminary Approval Order" means the Order Preliminarily Approving Settlement and Providing for Notice as approved by the Court, substantially in the form attached hereto as Exhibit A.

1.25    "Proof of Claim" means a Proof of Claim and Release, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2.

1.26    "Related Parties" means each of Defendants' predecessors, successors, parent corporations, sister corporations, subsidiaries, affiliates, assigns, assignors, divisions, joint ventures, heirs, legatees, executors, administrators, estates, receivers and trustees, settlors, beneficiaries, officers, directors, shareholders, employees, agents, consultants, contractors, auditors, partners, insurers, reinsurers, representatives, attorneys, legal representatives, and all persons acting by, through, under or in concert with them or any of them.

1.27    "Released Claims" means all known or unknown claims that both: (a) arise out of, are based upon, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, statements, representations, misrepresentations or omissions involved, set forth, alleged or referred to, in this Action, or which could have been alleged in this Action; and (b) arise out of, are based upon, or relate in any way to the purchase of the common stock of CV Sciences in the United States or on the OTC during the Class Period.  Released Claims do not include (i) any claims relating to the enforcement of the settlement or (ii) any Excluded Claims.  "Released Claims" includes "Unknown Claims" as defined in ¶1.36 hereof.

1.28    "Released Parties" means each and all of the Defendants and their respective Related Parties.

1.29    "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means Lead Plaintiff, each and every Class Member, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate

family members.  Releasing Plaintiff Parties do not include any Person who timely and validly seeks exclusion from the Class.

1.30    "Settled Defendants' Claims" means all known or unknown claims, demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Action or any forum by the Released Parties or any of them against Lead Plaintiff, Class Members, and Plaintiff's Counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of the Action (except for claims to enforce the settlement).  "Settled Defendants' Claims" includes "Unknown Claims" as defined in ¶1.36 hereof.

1.31    "Settlement Amount" means Seven Hundred Twelve Thousand Five Hundred U.S. Dollars ($712,500) in cash to be paid into the Escrow Account pursuant to ¶¶2.1 and 2.2 of this Stipulation.

1.32    "Settlement Fund" means the Settlement Amount plus any accrued interest or income earned thereon.

1.33    "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of himself and Members of the Class.

1.34    "Summary Notice" means the summary notice for publication, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-3.

1.35    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

1.36    "Unknown Claims" means: (a) any and all Released Claims that Lead Plaintiff or any Class Member does not know or suspect to exist in his, her, their or its favor at the time of the release of the Released Parties which, if known by him, her, them or it, might have affected his, her, their or its settlement with and release of the Released Parties, or might have affected his, her, their or its decision(s) with respect to the settlement, including the decision to object to the terms of the settlement or to exclude himself, herself, themselves or itself from the settlement Class; and (b) any Settled Defendants' Claims that any Released Party does not know or suspect to exist in his, her, their or its favor at the time of the release of the Lead Plaintiff, Class Members, and Plaintiff's Counsel,

which if known by him, her, them or it, might have affected his, her, their or its decision(s) with

respect to the settlement with and release of the Lead Plaintiff, Class Members, and Plaintiff's

Counsel, or might have affected his, her, their or its decision(s) with respect to the settlement.  With

respect to any and all Released Claims and Settled Defendants' Claims, the Settling Parties stipulate

and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly waive, and

each of the Class Members shall be deemed to have, and by operation of the Judgment shall have,

expressly waived any and all provisions, rights, and benefits conferred by California Civil Code §

1542 and any law of any state or territory of the United States, or principle of common law, which is

similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not
> know or suspect to exist in his or her favor at the time of executing the release and
> that, if known by him or her, would have materially affected his or her settlement with
> the debtor or released party.

Lead Plaintiff and Class Members may hereafter discover facts in addition to or different from

those that any of them now knows or believes to be true related to the subject matter of the Released

Claims, but Lead Plaintiff shall expressly, and each Class Member, upon the Effective Date, shall be

deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and

released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or

non-contingent, disclosed or undisclosed, matured or unmatured, which now exist, or heretofore have

existed, upon any theory of law or equity now existing or coming into existence in the future,

including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach

of any duty, law or rule, without regard to the subsequent discovery or existence of such different or

additional facts.  Similarly, the Released Parties may hereafter discover facts in addition to or

different from those that any of them now knows or believes to be true related to the subject matter of

the Settled Defendants' Claims, but each Defendant shall expressly and each of the Released Parties,

upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully,

finally, and forever settled and released any and all Settled Defendants' Claims, known or unknown,

suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or

unmatured, which now exist, or heretofore have existed, upon any theory of law or equity now

10

existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge, and Lead Plaintiff, the Class Members, and the Released Parties shall be deemed by operation of the Judgment to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settled Defendants' Claims was separately bargained for and is a key element of the settlement of which these releases are a part.

### 2.     The Settlement

#### a.   The Settlement Amount

2.1     Defendants and/or Defendant's insurers, on behalf of all Defendants, shall pay or cause to be paid the Settlement Amount.

2.2     The Settlement Amount will be paid in accordance with the instructions to be provided by the Escrow Agent within thirty (30) calendar days following the later of: (1) the date of entry of the Preliminary Approval Order; and (2) Lead Counsel furnishing to Defendants' counsel adequate written payment instructions consisting of wire transfer instructions and a completed W-9 form for the Settlement Fund, including an address and tax ID number.  The Settlement Amount shall be paid by wire transfer.

2.3     If the Settlement Amount is not timely paid to the Escrow Agent, Lead Plaintiff may terminate the Settlement but only if (a) Lead Counsel has notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and (b) the entire Settlement Amount is not transferred to the Escrow Agent within ten (10) calendar days after Lead Counsel has provided such written notice.  Failure by Lead Counsel to timely furnish adequate payment instructions to Defendants' counsel pursuant to ¶2.2 shall not be a basis for termination under this section and any delay in providing such instructions shall extend the period in which the Settlement Amount will be paid under ¶2.2 by an equivalent number of days.

2.4     Other than the Class Action Fairness Act ("CAFA") expenses referred to in ¶3.1, which will be paid by Defendants, Defendants shall have no obligation to make any payment besides the payment of the Settlement Amount in connection with the settlement.

### b.  The Escrow Agent

2.5     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶¶2.1 and 2.2 hereof in United States Agency or Treasury Securities or other instruments or accounts backed by the Full Faith & Credit of the United States Government or an agency thereof, or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.  The Released Parties shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.6      The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Lead Counsel.

2.7     Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.

2.8     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.9     The settlement is non-recapture; *i.e.*, it is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, or any other Person who paid any portion of the Settlement Amount, shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever (including, without limitation, the number of Proof of Claim forms submitted, the collective amount of recognized claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund), except as set forth in ¶7.4 below.

2.10    The Escrow Agent may, at any time after entry of the Preliminary Approval Order and without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $30,000 from the Settlement Fund prior to or after the Effective Date to pay Notice and

Administration Expenses.  After the Effective Date, additional amounts, up to a total of $15,000, may be transferred from the Settlement Fund to pay for any additional Notice and Administration Expenses without further order of the Court. Any additional Notice and Administration Expenses in excess of $45,000 shall be paid from the Settlement Fund subject to prior approval of the Court.

### c.  Taxes

2.11

(a)     The Settling Parties, the Escrow Agent, and the Claims Administrator agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  The Claims Administrator shall be responsible for timely making such elections as are necessary or advisable to carry out the provisions of this ¶2.11, including but not limited to the "relation-back election" (as defined in Treasury Reg. § 1.468B-1) to the earliest permitted date.  Such elections shall comply with the procedures and requirements in such regulations.  Additionally, it shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing(s) to occur.

(b)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Claims Administrator. The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the election described in ¶2.11(a) hereof) shall be consistent with this ¶2.11 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.11(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in

13

connection with the operation and implementation of this ¶2.11 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.11) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Parties and their counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. The Settlement Fund shall indemnify and hold each of the Released Parties and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court as directed by Lead Counsel and the Claims Administrator. The Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)) as directed by Lead Counsel and the Claims Administrator. The Settling Parties hereto agree to cooperate with the Escrow Agent, the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.11.

### d.  Termination of Settlement

2.12    In the event that this Stipulation is not approved or this Stipulation is terminated, canceled, or fails to become effective for any reason, the Settlement Fund (including accrued interest), less expenses paid, incurred, or due and owing consistent with this Stipulation, shall be refunded pursuant to written instructions from counsel for Defendants in accordance with ¶7.4 herein.

### 3.    Preliminary Approval Order and Final Approval Hearing

3.1    Shortly after execution of the Stipulation, Lead Plaintiff shall submit the Stipulation together with its exhibits (the "Exhibits") to the Court and apply for entry of the Preliminary Approval Order, substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the settlement set forth in the Stipulation, and approval for the Notice and Proof of Claim and publication of the Summary Notice, substantially in the forms of Exhibits A-1, A-

2, and A-3 attached hereto.  The Notice shall include the general terms of the settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application (defined below), and the date of the Final Approval Hearing.  In accordance with CAFA, Defendants, at their own cost, shall serve proper notice of the proposed settlement upon those who are entitled to notice pursuant to CAFA and shall be solely responsible with respect to such notice.

3.2     CV Sciences shall provide and/or cause CV Sciences' transfer agent to provide Lead Counsel, at no cost to Lead Plaintiff or the Class, transfer records for purchases of the Company's common stock during the Class Period in a usable electronic format, such as an Excel spreadsheet.  It shall be Lead Counsel's sole responsibility to disseminate the Notice, Proof of Claim, and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court.  Defendants shall not bear any cost or responsibility for class notice, administration, or the allocation of the Net Settlement Fund among Authorized Claimants, besides the payment of the Settlement Amount.  Class Members shall have no recourse as to the Released Parties with respect to any claims they may have that arise from any failure of the notice process.

3.3     Lead Counsel shall request that, after notice is given, the Court hold the Final Approval Hearing and approve the settlement of the Action as set forth herein and to enter the Judgment.  At or after the Final Approval Hearing, Lead Counsel will also request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4.     Releases**

4.1     Upon the Effective Date, as defined in ¶1.8 hereof, Lead Plaintiff shall, and each Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Parties and shall forever be barred, enjoined, and estopped from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Parties, whether or not such Class Member executes and delivers a Proof of Claim.

4.2     Upon the Effective Date, as defined in ¶1.8 hereof, each of the Released Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived,

released, relinquished, and discharged Lead Plaintiff, Plaintiff's Counsel, and each and all of the Class Members from all Settled Defendants' Claims.

**5.     Administration and Calculation of Claims, Final Awards, and Supervision of the Settlement Fund**

5.1     The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.

5.2     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Expenses;

(b)     to pay the Taxes and Tax Expenses;

(c)     to pay Plaintiff's Counsel's attorneys' fees and expenses, with interest thereon (the "Fee and Expense Award"), and an award of reasonable costs and expenses to Lead Plaintiff, if and to the extent allowed by the Court; and

(d)     to distribute the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

5.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

5.4     Within ninety (90) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form and content of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim.

5.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payment pursuant to this

Stipulation and the settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  Lead Counsel shall have no liability for not accepting late claims.

5.6     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion.  These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is no longer feasible to distribute to Class Members.  Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to Investor Protection Trust, a nation-wide non-profit organization dedicated to providing investor education and advocacy.

5.7     No Person shall have any claim against Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator, any other Person designated by Lead Counsel, or any of the Released Parties or their insurers based on determinations or distributions made substantially in accordance with this Stipulation and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.8     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the finality of the Court's Judgment approving the Stipulation and the settlement set forth herein, or any other orders entered pursuant to

the Stipulation.

**6.      Lead Plaintiff's Counsel's Attorneys' Fees and Expenses**

6.1      Lead Counsel, on behalf of all Plaintiff's Counsel, may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses incurred in connection with prosecuting the Action, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court; plus (c) payment to Lead Plaintiff for his costs and expenses in representing the Class.  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2      The fees and expenses awarded by the Court shall be payable to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses notwithstanding any objection thereto.  Lead Counsel shall allocate any Court-awarded attorneys' fees and expenses among Plaintiff's Counsel.

6.3      Any payment of attorneys' fees or expenses to Plaintiff's Counsel is subject to the obligation of Plaintiff's Counsel to make repayment to the Settlement Fund, or to Defendants if appropriate, of any paid amounts, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the settlement is terminated pursuant to the terms of this Stipulation or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the Fee and Expense Award is reduced or reversed by Final non-appealable court order.  Plaintiff's Counsel agrees that it is subject to the jurisdiction of the Court for the purpose of enforcing this paragraph.  Plaintiff's Counsel shall make the appropriate refund or repayment in full no later than twenty (20) business days after receiving notice of the termination of the settlement pursuant to this Stipulation, notice from a court of appropriate jurisdiction of the disapproval of the settlement by Final non-appealable court order, or notice of any reduction or reversal of the award of attorneys' fees and/or expenses by Final non-appealable court order.

6.4      Lead Counsel's Fee and Expense Application may include a request for reimbursement of Lead Plaintiff's reasonable costs and expenses in connection with his representation of the Class pursuant to 15 U.S.C. § 78u-4(a)(4).  However, in the event that the

Effective Date does not occur, or the judgment or the order approving Lead Plaintiff's application for an award for his costs and expenses is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, then Lead Plaintiff shall within twenty (20) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund or to Defendants if appropriate such amounts for costs and expenses previously paid to Lead Plaintiff from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification.

6.5     The procedure for and the allowance or disallowance by the Court of any applications by Lead Counsel for attorneys' fees and expenses, or the costs and expenses of Lead Plaintiff, to be paid out of the Settlement Fund, are not part of the settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in this Stipulation.  Any order or proceeding relating to applications for Lead Counsel's attorney's fees and expenses, or Lead Plaintiff's award, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the settlement of the Action set forth therein.

6.6     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of Defendants' obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶¶2.1-2.2, the Released Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Plaintiff's Counsel or Lead Plaintiff.

**7.  Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1     The Effective Date of this Stipulation is expressly subject to, and conditioned upon, the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶3.1 hereof;

(b)     the Settlement Amount has been deposited into the Escrow Account, as

required by ¶¶2.1 and 2.2 hereof;

        (c)    the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto;

        (d)    the Court dismisses the Action with prejudice;

        (e)    the Judgment has become Final, as defined in ¶1.12 hereof; and

        (f)    in the event that a case is commenced in respect of CV Sciences under Title 11 of the United States Code (Bankruptcy) prior to the occurrence of any of the foregoing events, that case has been finally adjudicated and Lead Plaintiff has not exercised its option to terminate the Stipulation pursuant to ¶7.8 hereof within ten (10) business days of such final adjudication.

    7.2    Upon the Effective Date, any and all remaining interest or right of the Released Parties or the Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

    7.3    If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, then this Stipulation shall be canceled and terminated subject to ¶7.6 hereof unless Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with this Stipulation.

    7.4    Unless otherwise ordered by the Court, in the event this Stipulation shall terminate, or be canceled, or shall not become effective for any reason, within twenty (20) business days after written notification of such event is sent by counsel for the Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund (including any interest or earnings accrued thereon), less expenses which have either been disbursed pursuant to ¶¶2.10-2.12 hereof, or are determined to be chargeable to the Settlement Fund pursuant to ¶¶2.10-2.12 hereof, shall be refunded by the Escrow Agent pursuant to written instructions from Defendants' counsel.  The Claims Administrator shall apply for any tax refund owed on the Settlement Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Defendants' counsel.

    7.5    In the event that this Stipulation is not approved by the Court or the settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms for any reason, the Settling Parties shall be restored to their respective positions in the Action as of October

25, 2021.  In such event, the terms and provisions of this Stipulation, with the exception of ¶¶1.1-1.36, 2.10-2.12, 6.3-6.4, 7.3-7.8, 8.3, and 8.11 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, expenses, and interest awarded by the Court to Lead Plaintiff or Lead Counsel shall constitute grounds for cancellation or termination of this Stipulation.

7.6    If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor Lead Counsel shall have any obligation to pay any amounts disbursed pursuant to ¶¶2.10-2.12.  In addition, any expenses already incurred pursuant to ¶¶2.10-2.12 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.12 and 7.4 hereof.

7.7    Defendants represent that to their actual knowledge at the time of execution of this Stipulation, they are not insolvent, nor do they project that the payment of the Settlement Amount in accordance with the Stipulation would render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.

7.8    If (i) before the Effective Date occurs, a case is commenced in respect of any of the Defendants or their insurers under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and (ii) a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of any Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction, and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by or on behalf of any other Defendant, then if both (i) and (ii) at the election of Lead Plaintiff, as to the Defendant to whom such order applies, the settlement may be terminated and the Judgment entered in favor of such Defendant shall be null and void.  In such instance, the releases given and the Judgments entered in favor of other Defendants

shall remain in full force and effect.  Alternatively, at the election of Lead Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the release given and the Judgment entered in favor of the Defendants and that Defendants and Lead Plaintiff and the Class Members shall be restored to their respective positions in the Action as of October 25, 2021, and any cash amounts in the Settlement Fund shall be returned as provided herein.

**8.   Miscellaneous Provisions**

8.1     The Settling Parties (a) acknowledge that it is their intent to consummate this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

8.2     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The settlement resolves claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that, and the Judgment will contain a finding that, during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties further agree that the parties and their counsel acted in good faith with respect to the Action and will not assert otherwise.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis.

8.3     Neither this Stipulation nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the settlement: (a) is or may be deemed to be or may be used as, a presumption, concession, or admission of, or evidence of, the validity of any Released Claim or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as, a presumption, concession, or an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal, or administrative

proceeding in any court, administrative agency, or other tribunal; or (c) is or may be deemed to be an admission or evidence that any claims asserted by Lead Plaintiff were not valid in any civil, criminal, or administrative proceeding.

8.4     Any of the Released Parties may file the Stipulation and/or the Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.5     For purposes of this settlement only, the Settling Parties agree to: (i) certification of the Action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), on behalf of the Class as defined in ¶1.4; (ii) the appointment of Lead Plaintiff as Class Representative for the Class; and (iii) the appointment of Lead Counsel as Class Counsel for the Class pursuant to Fed. R. Civ. P. 23(g).

8.6     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.7     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.8     This Stipulation and the Exhibits attached hereto constitute the entire agreement among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs.

8.9     Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which Lead Counsel deems appropriate.

8.10     Each counsel or other Person executing this Stipulation and any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

8.11     All agreements by, between or among the Settling Parties, their counsel and their other advisors as to the confidentiality of information exchanged between or among them shall

remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any condition of the Settlement.

8.12    This Stipulation may be executed in one or more counterparts and the signatures may be by facsimile or electronically.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

8.13    Any failure by any of the Settling Parties to insist upon the strict performance by any other Settling Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions thereof, and such Settling Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Settling Parties to this Stipulation.

8.14    The waiver, express or implied, by any Settling Party of any breach or default by any other Settling Party in the performance of such Settling Party of its obligations under the Stipulation shall not be deemed or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

8.15    This Stipulation shall be binding upon, and inure to the benefit of, the respective agents, executors, heirs, devisees, successors, and assigns of the Settling Parties.

8.16    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation.  Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court.

8.17    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Nevada, and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Nevada without giving effect to that State's choice of law principles, except to the extent that federal law requires that federal law govern.

IN WITNESS WHEREOF, the parties hereto have caused this Stipulation to be executed, by

1   their duly authorized attorneys, dated January 31, 2022.

2

3   Dated: January 31, 2022                         By: */s/Katherine Lenahan*
                                                          Katherine Lenahan
4
                                                      Martin A. Muckleroy
5                                                     State Bar #9634
                                                      **MUCKLEROY LUNT, LLC**
6                                                     6077 S. Fort Apache Rd., Ste 140
                                                      Las Vegas, NV 89148
7                                                     Telephone: 702-907-0097
                                                      Facsimile: 702-938-4065
8                                                     Email: martin@muckleroylunt.com

9                                                     Katherine M. Lenahan (*pro hac vice*)
                                                      Email: klenahan@faruqilaw.com
10                                                    Nina Varindani (*pro hac vice*)
                                                      Email: nvarindani@faruqilaw.com
11                                                    **FARUQI & FARUQI, LLP**
                                                      685 Third Avenue, 26th Floor
12                                                    New York, NY 10017
                                                      Telephone: 212-983-9330
13                                                    Facsimile: 212-983-9331

14                                                    *Attorneys for Lead Plaintiff Richard Ina, as*
                                                      *Trustee for The Ina Family Trust and Lead*
15                                                    *Counsel for the Class*

16

17

18   Dated: January 31, 2022
                                                      By: */s/Eric A. Plourde*
19                                                        Eric A. Plourde

20                                                    **PROCOPIO, CORY HARGRAVES & SAVITCH
                                                      LLP**
21                                                    Jeffrey A. Garofalo
                                                      State Bar #7345
22                                                    3960 Howard Hughes Pkwy., Ste. 500
                                                      Las Vegas, NV 89469
23                                                    Telephone: 702-216-2685
                                                      Facsimile: 619-788-5535
24                                                    E-mail: jeff.garofalo@procopio.com

25                                                    S. Todd Neal (*pro hac vice*)
                                                      Eric A. Plourde (*pro hac vice*)
26                                                    525 B Street, Ste 2200
                                                      San Diego, CA 92101
27                                                    Telephone: 619-525-3890
                                                      Facsimile: 619-398-0190
28                                                    E-mail: todd.neal@procopio.com
                                                      E-mail: eric.plourde@procopio.com

*Attorneys for Defendants CV Sciences, Inc., Joseph D Dowling, Michael Mona, Jr. & Michael Mona, III*