Martin A. Muckleroy
State Bar #9634
**MUCKLEROY LUNT, LLC**
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Telephone: 702-907-0097
Facsimile: 702-938-4065
Email: martin@muckleroylunt.com

Katherine Lenahan (*pro hac vice*)
Email: klenahan@faruqilaw.com
Nina Varindani (*pro hac vice*)
Email: nvarindani@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Lead Plaintiff Richard Ina, Trustee for The Ina Family Trust*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re: CV SCIENCES, INC. SECURITIES LITIGATION<br><br>This Document Relates to: All Actions | Case No. 2:18-cv-01602-JAD-BNW<br><br>**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# TABLE OF CONTENTS

MOTION .................................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................... 3

ARGUMENT .......................................................................................................................... 4

I.       THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ........................... 4

         A.      The Proposed Settlement Is Not The Result Of Collusion ............................ 5

         B.      The Proposed Settlement Is Fair, Adequate, And Reasonable ...................... 5

                 1.      The Class Has Been Adequately Represented ..................................... 6

                 2.      The Proposed Settlement Was Negotiated at Arm's Length .............. 7

                 3.      The Relief Provided for the Class Is Adequate .................................. 8

                         a.      The Costs, Risks, and Delay of Trial and Appeal .................. 8

                         b.      The Proposed Method for Distributing Relief Is Effective ..... 10

                         c.      Terms of Attorneys' Fees and Timing of Payment ................ 11

                         d.      Related Agreements ................................................................ 11

                 4.      The Settlement Treats Class Members Equitably .............................. 12

                 5.      The Stage of the Proceedings and the Extent of Discovery Completed ........... 12

                 6.      The Risks of Maintaining the Class Action Through Trial ............... 12

                 7.      The Experience and Views of Counsel ............................................. 14

                 8.      The Reaction of the Class ................................................................... 15

II.      THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE .... 18

III.     THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS ... 19

IV.      THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............ 20

CONCLUSION ..................................................................................................................... 21

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Affiliated Ute Citizens of Utah v. U.S.*,
    406 U.S. 128 (1972) ................................................................................. 13

*In re Am. Apparel, Inc. Shareholder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ................................................ 18

*In re Bear Stearns Cos. Inc. Sec., Derivative, and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................... 20

*In re Celera Corp. Sec. Litig.*,
    2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .................................... 9, 15, 20

*In re Chrysler-Dodge-Jeep Ecodiesel® Mtg., Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 2554232 (N.D. Cal. May 3, 2019) ...................................................... 6

*Churchill Village, L.L.C. v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) .......................................................................... 6, 8

*In re Citigroup, Inc. Sec. Litig.*,
    2014 WL 2112136 (S.D.N.Y. May 20, 2014) ................................................ 10

*Destafano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................... 5, 6, 12, 18

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ....................................................................................... 13

*In re GSE Bonds Antitrust Litig.*,
    2020 WL 3250593 (S.D.N.Y. June 16, 2020) ................................................... 6

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .................................................. 5

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................ 16

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................ 4, 19

*In re High-Tech Employee Antitrust Litig.*,
    2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ................................................. 18

*IBEW v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................... 10

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 15

*Johansson-Dohrmann v. Cbr Sys., Inc.*,
  2013 WL 3864341 (S.D. Cal. July 24, 2013) ............................................. 8, 9

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ...................................................................... 8

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 6, 14

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .............................................. 7

*Nobles v. MBNA Corp.*,
  2009 WL 1854965 (N.D. Cal. June 29, 2009) ............................................ 5, 9

*Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ....................................................................... 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................. 15, 18

*Patel v. Axesstel*,
  2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) .............................................. 19

*Ramirez v. Ghilotti Bros. Inc.*,
  2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ............................................. 14

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013) .............................................. 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
  2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ......................................... 10, 12

*Rieckborn v. Velti PLC*,
  2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................. 12

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................ 7

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
  119 F. Supp. 3d 1213 (C.D. Cal. 2015) ...................................................... 13

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .............................................. 10

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............................................ 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2 F.4th 1199 (2021) .................................................................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   2019 WL 4727338 (N.D. Cal. Sept. 26, 2019) ............................................................ 13, 14

*Walsh v. CorePower Yoga LLC*,
   2017 WL 4390168 (N.D. Cal. Oct. 3, 2017) .................................................................. 7

*Zepeda v. PayPal, Inc.*,
   2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ............................................................ 16

**Other Authorities**

Rule 23 .................................................................................................................. *passim*

## MOTION

Lead Plaintiff Richard Ina, as Trustee for the Ina Family Trust ("Ina" or "Lead Plaintiff"), on behalf of himself, as trustee, and the putative Class,[1] respectfully moves this Court for an Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (a) granting final approval of the proposed Settlement of the above-captioned securities class action lawsuit (the "Action") on the terms set forth in the Stipulation; (b) finding that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (c) certifying the proposed class for purposes of Settlement; (d) appointing Lead Plaintiff as Class Representative, Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel, and Muckleroy Lunt, LLC (the "Muckleroy Firm") as Liaison Class Counsel for Settlement purposes; and (e) granting final approval of the proposed Plan of Allocation.

This motion is based upon the memorandum of points and authorities set forth below; the Declaration of Katherine M. Lenahan ("Lenahan Declaration" or "Lenahan Decl."), with attached exhibits, filed herewith; the Schmidt Declaration, with attached exhibits, filed herewith; the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff, on behalf of himself, as trustee, and the putative Class, respectfully submits this memorandum in support of his motion for final approval of the Settlement.

## INTRODUCTION

As discussed in Lead Plaintiff's Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion" or "PA Motion"), ECF No. 159, Lead Plaintiff, on behalf of himself, as trustee, and the putative Class, and defendants CV Sciences, Inc. ("CV Sciences" or the

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotation marks are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated January 31, 2022 ("Stipulation" or "Stip.") (ECF No. 158); (d) "Settlement" refers to the settlement set forth in the Stipulation; (e) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (f) all references to the "Schmidt Declaration" or "Schmidt Decl." are to the Declaration of Kari L. Schmidt Regarding (A) Dissemination of Notice to the Class; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received, filed concurrently herewith.

"Company"), Michael Mona, Jr., Joseph D. Dowling, and Michael Mona, III (collectively "Defendants"), have reached a proposed Settlement for $712,500.00 that, if given final approval, will resolve all claims in the Action.  The Settlement represents a favorable result for the class in light of the significant risk that a smaller recovery—or no recovery at all—might be achieved after further litigation, particularly in light of the risks posed by continued litigation and the Company's financial position.

As discussed below and in the Lenahan Declaration, the Settlement was reached only after three years of hard-fought litigation and resulted from arms'-length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.

The Class's reaction to the Settlement and Plan of Allocation has been positive overall. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order" or "PA Order") (ECF No. 166), the Court-approved Claims Administrator, Analytics Consulting LLC ("Analytics"), has, *inter alia*, mailed 41,806 copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release form ("Claim Form") to potential Class Members and nominees, posted the requisite documents to the Action's settlement website, and caused the Summary Notice to be published in *Investor's Business Daily* and posted to *PR Newswire*.  Schmidt Decl. ¶¶3-11; Lenahan Decl. ¶¶53, 55.  Although the July 1, 2022 deadline for Class Members to object to the Settlement or request exclusion has not yet passed, only one request for exclusion and one objection have been received. Schmidt Decl. ¶13; Lenahan Decl. ¶¶58-60.

In light of the considerations discussed herein, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, and due process; and provides a favorable recovery for the Settlement Class.  Lead Plaintiff accordingly requests that the Court: (1) approve the Settlement on the terms set forth in the Stipulation; (2) find that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and the PSLRA; (3) certify the Class for settlement purposes; (4) appoint Lead Plaintiff as Class Representative, the

Faruqi Firm as Class Counsel, and the Muckleroy Firm as Liaison Counsel for Settlement purposes; and (5) approve the Plan of Allocation.

### FACTUAL AND PROCEDURAL BACKGROUND

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Lenahan Declaration for a more detailed description of Lead Plaintiff's claims and the prosecution of this Action. *See* Lenahan Decl. ¶¶11-31.

Briefly, following his appointment as Lead Plaintiff on November 15, 2018, Lead Plaintiff filed an Amended Class Action Complaint for Violations of the Federal Securities Laws ("AC") on January 4, 2019, naming as defendants CV Sciences; former Founder Emeritus, director, and Chief Executive Officer ("CEO") Michael Mona, Jr. ("Mona Jr."); CEO, CFO, and director Joseph D. Dowling ("Dowling"); and former Chief Operating Officer ("COO") and director Michael Mona, III ("Mona III"). ECF No. 30. The AC alleged that during the Class Period, Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder. *Id.* at ¶1. Specially, Lead Plaintiff alleged that Defendants made misleading statements and omissions concerning the patent application status and patentability of the Company's lead pharmaceutical product, CVSI-007, as well as the Company's progress in developing the drug, and omitted to disclose that the United States Trademark and Patent Office ("USPTO") twice rejected CVSI-007 as unpatentable. *See id.* at ¶¶49, 51, 53, 55, 57, 61, 63, 65, 67, 69, 71, 73, 75, 77-79.

On March 5, 2019, Defendants filed a motion to dismiss the AC (the "MTD"). ECF No. 33. While the decision on the MTD was still pending and after obtaining leave from the Court (ECF Nos. 59-60, 63), Lead Plaintiff filed as supplemental authority to his opposition to the MTD a decision from the USPTO's Patent Trial and Appeal Board, dated September 17, 2019, upholding the USPTO's final rejection of the CVSI-007 patent application. ECF No. 64.

On December 10, 2019, the Court denied Defendants' MTD. *See generally* ECF No. 70. Thereafter, the Parties began to engage in discovery,[2] and Lead Plaintiff filed a Second Amended Securities Class Action Complaint ("SAC"). ECF No. 127.

---

[2] While the parties were engaging in discovery, the USPTO issued United States Patent No. 10,653,639, entitled "Pharmaceutical Formulations Containing Cannabidiol and Nicotine for Treating Smokeless Tobacco Addition," which the Company claims formally grants CV Sciences patent protection for CVSI-007.

During the discovery process, the Parties met and conferred frequently over discovery issues. Lead Plaintiff filed two motions to compel, the first against the Mona Defendants in October 2020 (ECF No. 88), which was granted and denied in part (ECF Nos. 109, 111, 149), and the second against CV Sciences and Dowling (the "Company Defendants") in March 2021 (ECF No. 130), which was denied as moot after the parties informed the Court of their intent to engage in settlement negotiations (ECF No. 153).

On October 25, 2021, the Settling Parties engaged in a mediation session before Jed D. Melnick, Esq., a highly experienced securities litigation mediator at JAMS.  Lenahan Decl. at ¶¶31, 34.  The mediation was preceded by submission of confidential mediation statements and exhibits. *Id.* at ¶34.  The Settling Parties came to an agreement in principle during the mediation session and thereafter engaged in negotiations regarding the complete terms of the settlement, which are set forth in the Stipulation and which are subject to approval by the Court.  *Id.* at ¶¶34-35.

On January 31, 2022, Lead Plaintiff filed the Preliminary Approval Motion.  Following a hearing on March 3, 2022, the Court issued the Preliminary Approval Order on March 9, 2022, which, *inter alia*, approved the form and manner of providing notice to the Settlement Class, preliminarily certified the Class for settlement purposes, and set a hearing date for the Final Approval Hearing as well as deadlines for the briefing related thereto.  The details of the notice program's progress to date is explained in further detail in Section III, *infra*.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

Rule 23(e) provides that a class action settlement must receive court approval.  A court should approve a class action settlement if it determines that the settlement is "fair, reasonable, and adequate[.]"  Rule 23(e)(2).  While the authority to grant such approval lies within the court's discretion, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  Indeed, as one court has explained, "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

by, or collusion between, the negotiating parties." *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *1 (N.D. Cal. June 29, 2009).  Thus, when deciding whether to approve a settlement, the court must ensure that: (1) "the settlement is not the product of collusion among the negotiating parties" and (2) that the "settlement is fundamentally fair, adequate, and reasonable." *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

### A.    The Proposed Settlement Is Not The Result Of Collusion

As the Ninth Circuit explained in *In re Bluetooth Headset Prods. Liab. Litig.*, the court must analyze whether the settlement was reached as a result of collusion between the parties.  *Destafano v. Zynga, Inc.*, 2016 WL 537946, at *8 (N.D. Cal. Feb. 11, 2016) (citing *Bluetooth*, 654 F.3d 935, 946 (9th Cir. 2011)).  As Lead Plaintiff explained in the Preliminary Approval Motion, *see* ECF No. 159 at 6-8, there was no collusion here.

### B.    The Proposed Settlement Is Fair, Adequate, And Reasonable

To determine whether a proposed settlement is fair, adequate, and reasonable, courts consider the factors in recently amended Rule 23(e)(2), which provides that a court may grant final approval of a settlement:

> . . . only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)    The class representatives and class counsel have adequately represented the class;
>
> (B)    The proposal was negotiated at arm's length;
>
> (C)    The relief provided for the class is adequate, taking into account:
>
> > a.    The costs, risks, and delay of trial and appeal;
> >
> > b.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > c.    The terms of any proposed award of attorneys' fees, including timing of payment;
> >
> > d.    Any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    The proposal treats class members equitably relative to each other.

Rule 23(e)(2).

As explained in the Preliminary Approval Motion, amended Rule 23(e)(2)'s factors do not displace the factors that the Ninth Circuit previously used to determine whether the settlement is fair,

reasonable, and adequate, several of which overlap with Rule 23(e)(2)'s factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[3] and (8) the reaction of the class members to the proposed settlement. *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004). To find that a settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied. *See Zynga*, 2016 WL 537946, at *8 ("The Court need not consider all of these factors, or may consider others.").

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant Ninth Circuit factors have been met. Courts that have analyzed proposed settlements following the amendments to Rule 23 have found that the factors are usually satisfied where, as here, little has changed between preliminary and final approval. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mtg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting preliminary approval "stand and counsel equally in favor of final approval now"); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue already detailed why the relevant factors support approval, readopting that analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis). Nevertheless, the factors are analyzed below.

### 1. The Class Has Been Adequately Represented

Rule 23(e)(2)(A) is satisfied because Lead Plaintiff and Plaintiff's Counsel have adequately represented the Class throughout the litigation and will continue to do so through the Settlement administration process. Lead Plaintiff's interests are directly aligned with those of other Class

---

[3] The "presence of a governmental participant" is not relevant here because there is no governmental entity involved. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) (noting that this factor did not apply to the court's analysis where "[t]here is no governmental participant in this Class Action[]"). Lead Plaintiff will therefore not analyze this factor.

members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants.  *See* PA Motion at 5 (explaining Lead Plaintiff's adequacy).  Additionally, Lead Plaintiff has actively overseen the litigation every step of the way, having, among other things, reviewed filings in this Action, communicated with counsel about all aspects of the case, responded to discovery requests, and authorized the proposed settlement.  *See* Lenahan Decl., Ex. 5 (Lead Plaintiff's declaration).  Furthermore, Plaintiff's Counsel has zealously represented the Class at all times.  *See generally* Lenahan Decl.; *see also* PA Motion at 5-6, 19 (explaining counsels' adequacy).

### 2.     The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's length negotiations between Lead Counsel and Defendants' counsel.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. March 18, 2013) (finding the fact that the settlement "was a product of arm's length negotiation before a mediator" relevant to its decision to grant final approval).  Courts also recognize that "[t]he presence of a mediator strongly suggests the absence of collusion or bad faith by the parties or counsel."  *Walsh v. CorePower Yoga LLC*, 2017 WL 4390168, at *7 (N.D. Cal. Oct. 3, 2017).

The Settlement is the product of extensive arm's length negotiations among counsel with significant experience in securities class action litigation, and was reached following mediation with an experienced mediator.  This action was litigated aggressively by both parties from the beginning.  Lead Counsel, *inter alia*, thoroughly investigated the relevant facts; drafted the AC and SAC; vigorously opposed Defendants' motion to dismiss; engaged in numerous meet and confers with Defendants regarding the parties' discovery obligations; and fully briefed two motions to compel discovery from Defendants.  *See* Lenahan Decl. ¶¶32, 75.

After submitting mediation statements and exhibits, the parties engaged in a mediation session with the assistance of Jed Melnick, a well-respected mediator.  *See id*. at ¶34.  After debating their positions during the mediation session, the Parties reached an agreement in principle to settle the

1   Action, agreeing to Mr. Melnick's proposal of the Settlement Amount. *See id*. at ¶¶34-35.

2   Thereafter, the parties negotiated to come to a final agreement on the full terms of the settlement. *See*

3   *id*. at ¶35.

4          Thus, the Settlement was plainly the result of hard-fought, arm's length negotiations among

5   the parties.

6                      **3.        The Relief Provided for the Class Is Adequate**

7          Rule 23(e)(2)(C) requires the Court to take four specific considerations into account when

8   determining whether the relief provided for the class is adequate.  Each of these considerations is

9   addressed below, along with the Ninth Circuit factors that overlap with them.

10                     **a.        The Costs, Risks, and Delay of Trial and Appeal**

11          Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate

12   when taking into account the costs, risks, and delay of trial and appeal.  This inquiry overlaps with

13   the following Ninth Circuit factors: "the strength of the plaintiffs' case;" "the risk, expense

14   complexity, and likely duration of further litigation;" and "the amount offered in settlement[.]" *See*

15   *Churchill*, 361 F.3d at 576.

16          As the Ninth Circuit has noted, "[t]he proposed settlement is not to be judged against a

17   hypothetical or speculative measure of what ***might*** have been achieved by the negotiators. . . .";

18   rather, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of

19   highest hopes." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,

20   688 F.2d 615, 624-25 (9th Cir. 1982) (original emphasis).  Thus, "[t]he fact that a proposed

21   settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean

22   that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular*

23   *Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  When determining the reasonableness of the

24   settlement, "the Court must balance against the continuing risks of litigation (including the strengths

25   and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the

26   immediacy and certainty of a substantial recovery." *Johansson-Dohrmann v. Cbr Sys., Inc.*, 2013

27   WL 3864341, at *4 (S.D. Cal. July 24, 2013).  While "there is no particular formula by which the

28   outcome must be tested" when "assessing the strength of a plaintiff's case," "[t]he court may presume

that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *5 (N.D. Cal. Nov. 20, 2015).

As explained in the Preliminary Approval Motion, the $712,500 Settlement provides an immediate benefit to the class and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after protracted litigation. Lead Plaintiff has always believed that his claims have merit and would be proven through fact discovery. Despite this confidence, Lead Plaintiff is aware of the substantial risks and expenses that would be presented by further litigation based on his work to date.

For one thing, it is well known that class action litigation is inherently complex, *see Nobles*, 2009 WL 1854965, at *2, and this case is no exception. Over three years of contentious litigation, Defendants have vehemently denied any wrongdoing. The parties strongly disagreed over the appropriate scope of discovery in this case, which necessitated the parties engaging in at least 10 meet and confers and resulted in Lead Plaintiff filing two motions to compel. As explained in the Preliminary Approval Motion and the Lenahan Declaration, the difficulty and litigation surrounding discovery alone plainly demonstrates the cost, risks, and delay present in this Action. *See, e.g.,* ECF Nos. 88, 98, 100, 103–04, 106–09, 111, 116–17, 121–24, 126, 128, 130, 134–36, 138, 149 (briefing, orders, and minutes of proceedings related to Lead Plaintiff's motions to compel). There is no doubt that Defendants would continue to aggressively litigate were this Action to continue. Thus, even after the considerable time and expense of additional discovery, which would span many more months, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment. The chance also remains that class certification may be denied, as discussed further in Section I.B.6, *infra*. Even if a litigation class was certified and Lead Plaintiff's claims survived summary judgment, a trial in the Action would be time consuming, expensive, and expend judicial resources.

Additionally, the risks of further litigation are exacerbated by CV Sciences' financial position and limited insurance coverage. *See* PA Mot. at 9; Lenahan Decl. at ¶43.

In light of the foregoing, the Settlement Amount of $712,500—which was proposed by the mediator—provides a favorable result for the Class and is well within the range of reasonableness.

Lenahan Decl. at ¶¶35, 48.  It represents approximately 3.39% of the Class's maximum potential

damages (assuming the class was certified and all claims and damages were proven) that Lead

Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.

*See id.* at ¶72; PA Motion at 9-10.  This is well within the range of typical recoveries in complex

securities litigation such as this.  *See also IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3

(D. Nev. Oct. 19, 2012) (approving securities class action settlement where recovery was "about

3.5% of the maximum damages that Plaintiffs believe could be recovered at trial[]"); *Vataj v.

Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering

approximately 2% of estimated damages as "consistent with the 2-3% average recovery that the

parties identified in other securities class action settlements[]"); *In re Regulus Therapeutics Inc. Sec.

Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving $900,000 settlement

representing 1.99% of total estimated damages and collecting cases approving damages of 1.6-5% of

estimated damages); *In re Citigroup, Inc. Sec. Litig.,* 2014 WL 2112136, at *5 (S.D.N.Y. May 20,

2014) (determining settlement amount representing 2% of the class's out-of-pocket losses "falls

squarely within this range of reasonableness").

     **b.**  **The Proposed Method for Distributing Relief Is Effective**

    Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of

distributing relief to the class is effective, including the processing of class members' claims.  The

method used in this Action is that traditionally used in securities class actions.

    Pursuant to the Preliminary Approval Order, beginning on March 30, 2022, 41,806 copies of

the Notice and Claim Form were mailed to potential Class Members and nominees, and the Summary

Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on April 11,

2022.  Schmidt Decl. ¶¶3-10.  Class Members who want to object to the Settlement or request

exclusion from the Class are required to do so by July 1, 2022.  *See* PA Order at ¶¶19, 23.  Although

the time for objections and exclusions has not yet expired, only one request for exclusion and one

objection to the Settlement have been received.  *See* Schmidt Decl. ¶13; Lenahan Decl. ¶¶58-60.

Thus, the reaction of the Class so far confirms the adequacy of the Settlement.  *See Redwen v. Sino

Clean Energy, Inc.*, 2013 WL 12303367, at *8 (C.D. Cal. July 9, 2013) (explaining that "[i]f only a

small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement[]" and finding that the class's reaction was "overall positive" where there were five requests for exclusion and one objection).

Additionally, the Settlement's claims process is similar to the process commonly used in securities class action settlements, and provides for cash payments to eligible class members based on their *pro rata* share of the recovery as established by the trading information eligible Class Members provide.  *See* PA Motion at 10-11; Section II, *infra*.  This factor supports final approval for the same reason that it supported preliminary approval.  *See* PA Motion at 10-11.

### c.    Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment[.]"  Consistent with the Notice, and as discussed in the Fee Motion,[4] Lead Counsel seeks an award of attorneys' fees in an amount of 25% of the Settlement Fund, which is the benchmark award in this Circuit.  *See Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012).  This amount is supported by Plaintiff's Counsel's lodestar, which is $1,419,888 based on 2,444.1 hours of attorney and professional staff time.  *See* Lenahan Decl. ¶¶75-76.  Thus, an award of 25% of the Settlement Fund (approximately $178,125) represents no windfall to Plaintiff's Counsel, as it is substantially less than the actual fees incurred.

Pursuant to the Stipulation, attorney's fees are to be paid "immediately after the Court executes an order awarding such fees and expenses notwithstanding any objection thereto[,]" subject to the obligation to repay as described therein.  Stipulation ¶¶6.2-6.3.  The timing of payment is standard in class action cases and typically approved.  *See* PA Motion at 11-12.

### d.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  As disclosed in the Preliminary Approval Motion, the only such agreement is the escrow agreement between Lead Counsel and the proposed Escrow Agent, which governs the deposit, investment, and disbursement of the Settlement Fund in terms consistent with the Stipulation.

---

[4]    "Fee Motion" refers to Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award for Lead Plaintiff, filed concurrently herewith.

### 4.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the court to consider whether "the proposal treats class members equitably relative to each other."  As discussed in Section II, *infra*, the Plan of Allocation does just that, calculating each Authorized Claimant's losses based on the timing of their purchases and sales of CV Sciences common stock and providing that each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.  Lead Plaintiff's request for an award of $12,000 pursuant to 15 U.S.C. § 78u-4(a)(4) is reasonable, as explained in the accompanying Fee Motion, and does not change this conclusion.  *See* PA Motion at 12-13; *see Regulus*, 2020 WL 6381898, at *5 (finding that a reasonable service award to Lead Plaintiff "does not constitute inequitable treatment of class members").

### 5.    The Stage of the Proceedings and the Extent of Discovery Completed

When determining whether the stage of the proceedings and extent of discovery completed supports settlement, "the court focuses on whether the parties carefully investigated the claims before reaching a resolution."  *Zynga*, 2016 WL 537946, at *12.

As explained in Section I.B.2, *supra*, the Parties garnered substantial information related to the Action and their respective claims and defenses prior to engaging in settlement negotiations, and had sufficient information to make an informed assessment of the Action's strengths and weaknesses and the Settlement's fairness.  *See Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached before the filing of a motion to dismiss).  Thus, this factor supports final approval.

### 6.    The Risks of Maintaining the Class Action Through Trial

As explained in the Preliminary Approval Motion, the Class has not yet been certified.  While Lead Plaintiff and Lead Counsel are confident that the class meets the requirements for certification, they understand that Defendants intend to vigorously oppose Lead Plaintiff's anticipated motion for class certification.  *See* PA Mot. at 14.  Specifically, they anticipate that Defendants would argue that Plaintiff cannot establish predominance, required by Rule 23(b)(3).

The predominance inquiry begins with the elements of the claim.  *See Erica P. John Fund,*

*Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  One of the elements Plaintiff would have to prove is reliance.  *Id.* at 809-10.  In most securities cases, requiring proof of direct reliance would place an unnecessary evidentiary burden on securities plaintiffs.  *Id.* at 810.  Accordingly, the Supreme Court has held that plaintiffs can invoke a rebuttable presumption of reliance based on the "fraud-on-the-market" theory, which holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."  *Id.* at 811. To establish the fraud-on-the-market presumption, a plaintiff must show, *inter alia*, that the defendant company's stock traded in an efficient market.  *Id.*  Plaintiff anticipates that Defendants will argue that he will not be able to invoke the presumption because CV Sciences stock traded on the OTC market.  *See* ¶119.  While there is no *per se* rule that the OTC market is inefficient, many courts have found that to be the case, and there is a risk that this court would have agreed with them.  *See ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1252 (C.D. Cal. 2015) (finding the OTC market inefficient).

Lead Plaintiff, however, could also use the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. U.S.*, which held that in cases "involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."  406 U.S. 128, 153 (1972).  "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."  *Id.* at 153-54.  The Court presumed reliance because "[t]his obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact."  *Id.* at 154.  Lead Plaintiff set forth in the SAC that he and the putative class are presumed to rely on Defendants' omissions pursuant to *Affiliated Ute*, and cited *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 4727338 (N.D. Cal. Sept. 26, 2019), in support.  *See* ¶121.  The *Volkswagen* court found that although the plaintiffs there alleged both misrepresentations and omissions, it was best characterized as a nondisclosure case and therefore the plaintiff was entitled to the *Affiliated Ute* presumption of reliance.  *Volkswagen*, 2019 WL 4727338, at *1.

Shortly before the Parties here agreed to try mediation, the *Volkswagen* case was reversed and remanded by the 9th Circuit, which found that the case's allegations "cannot be characterized

primarily as claims of omission," and held that the *Affiliated Ute* presumption cannot apply.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig*., 2 F.4th 1199, 1202 (2021). While Lead Plaintiff is confident that the Ninth Circuit decision in *Volkswagen* is distinguishable and would not prevent class certification in this Action, he anticipates that Defendants would take the opposite position, and there is a risk that the Court may agree with Defendants.

Even if Lead Plaintiff was able to overcome Defendants' challenges and certify the Class, there is always a risk that the Class could be decertified later.  *See* Rule 23(c)(1)(C).  Accordingly, the risks facing the certification of a litigation class in this Action weigh strongly in favor of settlement.

### 7.    The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *DIRECTV*, 221 F.R.D. at 528; *see also Ramirez v. Ghilotti Bros. Inc.*, 2014 WL 1607448, at *1 (N.D. Cal. Apr. 21, 2014) (finding that experienced class counsel's support for the settlement, which "was reached after arm's length negotiations," weighed in favor of settlement).

As set forth in detail in the Faruqi Firm's resume, Lead Counsel is a nationally-recognized law firm that has substantial experience litigating securities class action lawsuits.  *See* Lenahan Decl., Ex. 2.  Likewise, the Muckleroy Firm has substantial complex litigation experience and has served the Class ably as Liaison Counsel.  Additionally, Defendants were represented by Procopio, Cory, Hargreaves & Savitch LLP, a highly reputable firm with significant experience in complex securities litigation.

Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate proceedings even if Lead Plaintiff were victorious at trial, concluded that settlement here is a favorable result for the Class.  *See* Lenahan Decl. ¶¶36-44; 48-49.  Thus, since "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to [a] great deal of weight."  *In re Immune*

1   *Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007).

2                  **8.      The Reaction of the Class**

3          "It is established that the absence of a large number of objections to a proposed class action

4   settlement raises a strong presumption that the terms of a proposed class [action settlement] are

5   favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D.

6   Cal. 2008).  "[T]he willingness of the overwhelming majority of the class to approve the offer and

7   remain part of the class presents at least some objective positive commentary as to its fairness."

8   *Celera*, 2015 WL 7351449, at *7.

9          To date, a total of 41,806 copies of the Notice have been mailed to potential Class members

10  and nominees, and the Summary Notice was published in *Investor's Business Daily* and posted on *PR*

11  *Newswire* on April 11, 2022.  *See* Schmidt Decl. ¶¶4-10.  Despite this large number of potential Class

12  Members, only one objection and one request for exclusion have been received.  Thus, although the

13  time for objections and exclusions has not yet expired, the reaction of the Class so far confirms the

14  adequacy of the Settlement.  *See* Lenahan Decl. ¶¶57-60.

15         The sole objection to the Settlement to date was submitted by Richard A. Durand.  ECF No.

16  167.  Lead Plaintiff respectfully submits that Mr. Durand's objection is without merit.  The crux of

17  Mr. Durand's objection appears to be that the Notice is vague, Defendants did nothing wrong, and

18  that the Settlement Amount is inadequate.  Lead Plaintiff addresses each of these arguments in turn.

19  Mr. Durand stated, *inter alia*:

20             The Lead Plaintiff's documentation as described in the informational papers sent
             to me, describing the reason for the lawsuit are vague.  There is no
21           documentation, proof or evidence that CV Sciences, Inc., made misleading
             statements to the public.
22
23  *Id.* at 1 ¶1.  With respect to Mr. Durand's argument that the Notice is vague, Lead Plaintiff

24  respectfully disagrees.  The Notice, approved by the Court, contains all of the elements required by

25  Rule 23, the PSLRA, and due process, as explained in Section III, *infra*, and the Preliminary

26  Approval Motion at 19-20.  The reasons for the lawsuit are set forth on pages 3-4 of the Notice, and

27  there is no requirement that a settlement notice include "documentation, proof or evidence" of the

28  allegations.  *See* Schmidt Decl., Ex. A at 3-4.  Indeed, the reasons are described briefly for the sake

    of having a Notice of manageable length that still contains the information required to be set forth by

Rule 23, the PSLRA, and due process.

Mr. Durand also argues:

> Since the "Defendants deny any wrongdoing or liability whatsoever", as a shareholder, I believe further investigation is warranted to find out whether or not any large short positions of the Company's stock existed prior to or on the day of these allegation became public and if so, who they were.

ECF No. 167 at 1 ¶1.  He also states that upon the allegations "becoming public" on August 20, 2018, his "investment was crushed" and left him "basically no choice but to take a 'wait and see' if the stock price would recover.  It never did as the allegations persisted."  ECF No. 167 at 1 ¶2.

Mr. Durand's argument appears to be that CV Sciences did nothing wrong, that short selling activity in the Company's stock is the real reason for the stock price decline on August 20, 2018, and that the allegations in this Action harmed shareholders.  This is speculative and not a basis for objection.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *10 (N.D. Cal. Dec. 18, 2018) (overruling objections "expressing dissatisfaction with this lawsuit" and suggesting that suing the defendant company "would actually harm shareholders").

Mr. Durand also objects to the Settlement Amount, stating:

> The settlement is completely and totally inadequate and needs to be re-designed so that shareholders may recover their investment.  For example: If the Company plans to stay in business, a revenue sharing program with the shareholders can be developed where annual distributions can be made or bonds issued to the shareholders that pay a market-based interest rate may suffice.  I am sure there is a better way to design this settlement than what is being proposed.  The monetary settlement for the members is confusing, unclear, and insufficient.

ECF No. 167 at 1 ¶3.  This objection is also meritless.  For one thing, Mr. Durand does not explain why the proposed Settlement is insufficient.  To be sure, Lead Plaintiff and Plaintiff's Counsel would prefer a larger Settlement Amount, but given the serious risk that further litigation would leave the Class with a lesser recovery—or none at all—they concluded that the proposed Settlement was the best result for the Class under these circumstances.  *See Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *18 (N.D. Cal. Mar. 24, 2017) (overruling objections that "fail to identify any specific reason they believe the Settlement's terms do not adequately compensate class members, especially considering the significant risk they would receive nothing if the case went to trial").

Mr. Durand's suggestion that the settlement be restructured as a "revenue sharing program," is

impractical.  First, Lead Counsel is unaware of any securities class action settlement that has been structured this way, and there is no indication Defendants would ever agree to such an arrangement. Second, it is unclear how such a program would be administered, let alone in a manner that would be cost-effective.  Presumably, such a program would require years of oversight by the Claims Administrator, Plaintiff's Counsel, and Defendants' counsel, which would incur significant fees and expenses for both parties and reduce whatever Class Members would receive under such a program.

Even if such an arrangement were administratively feasible, there is a considerable risk that Class Members would receive substantially less under a revenue sharing program than they would under the proposed Settlement.  For example, the Company's most recent quarterly report provides that its "financial operating results and accumulated deficit, amongst other factors, raise substantial doubt about the Company's ability to continue as a going concern." CV Sciences Quarterly Report at 23 (Form 10-Q, filed May 16, 2022).  The Company had only $2.439 million in cash and cash equivalents as of March 31, 2022, *id.* at 1, and its stock has been trading around $0.01 or less for over a month.  *See* CVSI, Yahoo! Finance, https://finance.yahoo.com/quote/CVSI (last visited June 1, 2022).  The Company's gross profit for the year ended 2021 was approximately $8.616 million, a 22% decrease from the previous year.  *See* CV Sciences Annual Report at 8 (Form 10-K, filed April 4, 2022).  CVSI-007, the Company's lead pharmaceutical product, is still under development and not yet FDA-approved.  *See id.* at 2.  Given the Company's financial position and prospects, there is no basis to assume that the Class would receive anywhere near a better deal than that provided by the Settlement under a revenue-sharing program.

For the foregoing reasons, Lead Plaintiff respectfully submits that Mr. Durand's objection is without merit and should be overruled.

To date, only one request for exclusion has been received.  As described in the Schmidt Declaration, the request is invalid because the shareholders did not purchase CV Sciences common stock during the Class Period and are therefore not Class Members. *See* Schmidt Decl. ¶13, Ex. D.

The fact that only one objection and no valid requests for exclusion have been submitted in response to the mailing of 41,806 Notices further supports approval of the settlement.  *See Zynga*, 2016 WL 537946, at *14 (stating that a low number of exclusions supports a settlement's

reasonableness); *Omnivision*, 559 F. Supp. 2d at 1043 (finding that the class's reaction weighed in favor of the settlement where "the Court received objections from only 3 out of 57,630 potential Class Members who received the notice[]").

## II.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court has broad discretion in approving a plan of allocation.  "Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate."  *In re Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *18 (C.D. Cal. July 28, 2014).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015).

In developing the Plan of Allocation, Lead Plaintiff enlisted the help of a damages consultant who was familiar with the damages issues in this Action, as well as the help of the Claims Administrator which has experience implementing plans of allocation in securities class actions.  *See* Lenahan Decl. ¶66.  The Plan of Allocation's objective is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their claimed losses consistent with the SAC's allegations.  *See id.* at ¶¶64-65.  Specifically, after Authorized Claimants submit their Claim Forms and supporting documentation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss according to a formula that will take into account, *inter alia*, when and at what price they purchased CV Sciences common stock.  *See id.* at ¶65.  In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased common stock during the Class Period and held their stock through August 20, 2018 at 1:21pm EST, the time of the corrective disclosure.  *See id.* ¶65.  The amount recovered per share will depend upon when a share was purchased and, if sold, when.  *See id.*  Authorized Claimants cannot recover more than their out-of-pocket losses.  Thus, "the plan allocates the settlement fund proportional to the actual injury of each class member.  Accordingly, the plan of allocation is fair, reasonable and adequate."  *Patel v. Axesstel*, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015); *see also Heritage*, 2005 WL 1594403, at *11 ("[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every

18

Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

The terms of the Plan of Allocation were fully disclosed in the Notice that was mailed to 41,806 potential Class Members and nominees and posted on the Action's website. *See* Schmidt Decl. ¶¶4-9, 11, Ex. A at 9-12. While Class Members have until July 1, 2022 to object, there have been no objections to the Plan to date. *See* Lenahan Decl. ¶67. Thus, for the reasons set forth herein and in the Lenahan Declaration, Lead Plaintiff respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate.

## III. THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class action settlement must meet the requirements of Rule 23, the PSLRA, and the due process clause of the United States Constitution. Rules 23(c)(2)(B) and 23(e)(1)(B) require that the Court direct to class members "the best notice that is practicable under the circumstances" and "in a reasonable manner." The PSLRA and the due process clause impose similar requirements. *See* PA Mot. at 19-20.

The Court preliminarily approved the form, content, and method of dissemination of the notices provided to potential Class Members. *See* PA Order at ¶6. Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim Form have been mailed to 41,806 potential Class Members and nominees beginning on March 30, 2022. *See* Schmidt Decl. ¶¶4-9. That same day, the Notice and Claim Form were also made available on the settlement website, along with the Stipulation and its exhibits, and the Preliminary Approval Order. *See id.* at ¶11. The Summary Notice was published in *Investor's Business Daily* and posted by *PR Newswire* on April 11, 2022. *See id.* at ¶10. Additionally, Analytics has set up a toll-free telephone helpline to accommodate potential Class Members who have questions regarding the Settlement. *See id.* at ¶12.

As described in the Preliminary Approval Motion, the Notice included the information required by Rule 23, the due process clause, and the PSLRA. *See* PA Motion at 19-20 (describing the contents of the Notice).

Courts in this Circuit have routinely found that this method of mailing, publication, and

19

Internet notice satisfies the applicable notice standards in similar class actions. This manner of providing notice represents the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See, e.g., Celera*, 2015 WL 7351449, at *5 (finding a similar notice plan appropriate). Thus, Lead Plaintiff respectfully requests that the Court find the notice program satisfies the requirements of Rule 23, the PSLRA, and due process.

## IV.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for Settlement purposes. *See* PA Order at ¶2. Since the entry of that Order, no circumstances have changed to alter the propriety of the Court's certification and appointments. *See In re Bear Stearns Cos. Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (certifying a settlement class where there had been no material changes since the court preliminarily certified the class). Thus, pursuant to Rules 23(a) and (b)(3), and for reasons set forth below and in further detail on pages 15-19 of the Preliminary Approval Motion, Lead Plaintiff respectfully requests that the Court grant final certification of the following Class for purposes of Settlement only:

> [A]ll Persons who purchased the common stock of CV Sciences in the United States or on the OTC between June 19, 2017 and August 20, 2018 at 1:21 p.m. EST, inclusive, and were allegedly damaged thereby. Excluded from the Class are: (a) Defendants; (b) the officers and directors of the Company at all relevant times; (c) members of any Defendant's immediate families; (d) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (e) the legal representatives, heirs, agents, successors or assigns of such excluded Persons; (f) Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; (g) those who purchased CV Sciences common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) ("[I]t is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which §10(b) applies."); and (h) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

Stipulation ¶1.4.

Lead Plaintiff also respectfully requests that the Court appoint Mr. Ina, as Trustee for The Ina Family Trust, as Class Representative, the Faruqi Firm as Class Counsel, and the Muckleroy Firm as Liaison Class Counsel.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons stated above, Lead Plaintiff respectfully requests that the Court: (a) grant final approval of the proposed Settlement; (b) find that the form and manner of giving notice of the Settlement to the Class satisfied due process, Rule 23, and the PSLRA; (c) certify the Class for settlement purposes; (d) appoint Lead Plaintiff as Class Representative, the Faruqi Firm as Class Counsel, and the Muckleroy Firm as Liaison Class Counsel for settlement purposes; and (e) grant approval of the Plan of Allocation.

Dated: June 2, 2022

By: */s/ Katherine Lenahan*
Katherine Lenahan

Martin A. Muckleroy
State Bar #9634
**MUCKLEROY LUNT, LLC**
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Telephone: 702-907-0097
Facsimile: 702-938-4065
Email: martin@muckleroylunt.com

Katherine Lenahan (*pro hac vice*)
Email: klenahan@faruqilaw.com
Nina Varindani (*pro hac vice*)
Email: nvarindani@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Lead Plaintiff Richard Ina, as Trustee for The Ina Family Trust and Lead Counsel for the Class*

1

### CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

By: */s/ Katherine Lenahan*
Katherine Lenahan

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28