Martin A. Muckleroy
State Bar #9634
**MUCKLEROY LUNT, LLC**
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Telephone: 702-907-0097
Facsimile: 702-938-4065
Email: martin@muckleroylunt.com

Katherine Lenahan (*pro hac vice*)
Email: klenahan@faruqilaw.com
Nina Varindani (*pro hac vice*)
Email: nvarindani@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Lead Plaintiff Richard Ina, Trustee for The Ina Family Trust*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re: CV SCIENCES, INC. SECURITIES LITIGATION | Case No. 2:18-cv-01602-JAD-BNW <br><br> **LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AN AWARD FOR LEAD PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: All Actions | |

# TABLE OF CONTENTS

MOTION ..................................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..........................................................1

INTRODUCTION ....................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ..............................................................2

ARGUMENT ...........................................................................................................................2

I.      THE REQUESTED FEE IS REASONABLE IN THIS CASE .......................................2

      A.      Percentage Of The Fund Is The Preferred Method ................................2

      B.      The Requested Fee Of 25% Is Reasonable ..........................................3

              1.      Plaintiff's Counsel Obtained a Favorable Result for the Class ............3

              2.      Litigation of this Action Involved Significant Risks.............................5

              3.      Plaintiff's Counsel Provided Quality Representation ............................5

              4.      Plaintiff's Counsel Took on a Financial Burden ...................................6

              5.      The Fee Is In Line With the Customary Fee in Similar Actions ...........7

              6.      The Requested Fee Is Reasonable Under the Lodestar Cross-Check ...8

              7.      Information Required By Local Rule 54-14.............................................9

II.     THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY
     INCURRED........................................................................................................................10

III.    THE REQUESTED AWARD FOR LEAD PLAINTIFF IS REASONABLE ...........................11

CONCLUSION ........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*In re Am. Apparel, Inc. Shareholder Litig.,*
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ............................................................................ 6, 7

*In re Amgen Inc. Sec. Litig.,*
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ............................................................................ 12

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ................................................................................................ 3, 4, 9

*In re CV Therapeutics, Inc., Sec. Litig.,*
    2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ............................................................................ 8, 12

*Destefano v. Zynga, Inc.,*
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................................ *passim*

*In re DJ Orthopedics, Inc. Sec. Litig.,*
    2004 WL 1445101 (S.D. Cal. June 21, 2004) ................................................................................ 7

*Fischel v. Equitable Life Assur. Soc'y of the U.S.,*
    307 F.3d 997 (9th Cir. 2002) ....................................................................................................... 3

*Greene v. Jacob Transportation Services, LLC,*
    2018 WL 11424176 (D. Nev. Aug. 29, 2018) ................................................................................ 9

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .......................................................................................................... 10

*HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.,*
    2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ................................................................................ 6

*Hefler v. Wells Fargo & Co.,*
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................................ 9

*In re Heritage Bond Litig.,*
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................................ 7, 8, 10

*In re Hewlett-Packard Co. Sec. Litig.,*
    2014 WL 12656737 (C.D. Cal. Sept. 15, 2014) ............................................................................ 11

*IBEW v. Int'l Game Tech., Inc.,*
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) .................................................................................. 4

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. May 3, 2007) ........................................................................ 8, 12

*Lopez v. Youngblood,*
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ............................................................................... 3

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 6

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................. 7, 8

*In re Nuvelo, Inc. Sec. Litig.*,
    2011 WL 2650592 (N.D. Cal. July 6, 2011) ................................................................. 8

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 3, 7, 8

*Ramsey v. MRV Commc'ns Inc.*,
    2010 WL 11596641 (C.D. Cal. Nov. 16, 2010) ................................................................. 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ................................................................. 4

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................................................. 10

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ................................................................. 3

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................. 3, 7

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................................................. 4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................. 8

*In re Vocera Commn'cs, Inc. Sec. Litig.*,
    2016 WL 8201593 (N.D. Cal. July 29, 2016) ................................................................. 11

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*,
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ................................................................. 9

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................................. 3

*Weitzke v. CoStar Realty Info., Inc.*,
    2011 WL 817438 (S.D. Cal. Mar. 2, 2011) ................................................................. 5

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................. 11

**Other Authorities**

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995) ...................................................................... 11

### MOTION

Lead Plaintiff Richard Ina, as Trustee for the Ina Family Trust ("Ina" or "Lead Plaintiff"), on behalf of himself, as trustee, and the putative Class,[1] respectfully moves this Court for an Order pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4: (a) awarding attorneys' fees in the amount of 25% of the Settlement Fund, or $178,125 plus accrued interest; (b) reimbursing expenses in the amount of $37,731.49, plus accrued interest; and (c) authorizing an award for Lead Plaintiff in the amount of $12,000 pursuant to 15 U.S.C. §78u-4(a)(4).

This motion is based upon the memorandum of points and authorities set forth below; the Declaration of Katherine M. Lenahan ("Lenahan Declaration" or "Lenahan Decl."), with attached exhibits, filed herewith; the Declaration of Martin A. Muckleroy, filed herewith; the Schmidt Declaration, with attached exhibits, filed herewith; the pleadings and records on file in the above-captioned action (the "Action"), and other such matters and argument as the Court may consider at the hearing of this motion.

### MEMORANDUM OF POINTS AND AUTHORITIES
#### INTRODUCTION

As discussed in Lead Plaintiff's Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion"), ECF No. 159, Lead Plaintiff, on behalf of himself, as trustee, and the putative Class, and defendants CV Sciences, Inc. ("CV Sciences" or the "Company"), Michael Mona, Jr., Joseph D. Dowling, and Michael Mona, III (collectively "Defendants"), have reached a proposed Settlement for $712,500.00 that, if given final approval, will resolve all claims in the Action.  The Settlement is the result of zealous prosecution by Lead Counsel and Lead Plaintiff and is a favorable result for the Class considering the significant risks that a smaller recovery—*or no*

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotation marks are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated January 31, 2022 ("Stipulation" or "Stip.") (ECF No. 158); (d) "Settlement" refers to the settlement set forth in the Stipulation; (e) all references to "Rule(s)" refer to the Federal Rules of Civil Procedure; and (f) all references to the "Schmidt Declaration" or "Schmidt Decl." are to the Declaration of Kari L. Schmidt Regarding (A) Dissemination of Notice to the Class; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received, filed concurrently herewith.

1

*recovery at all*—might be achieved after further litigation, particularly in light of the risks posed by continued litigation and the Company's financial position.

In connection with the Settlement, Lead Counsel, on behalf of Plaintiff's Counsel, respectfully seeks approval of an award of attorneys' fees in the amount of 25% of the Settlement Fund, and reimbursement of $37,731.49 in expenses reasonably incurred during the course of the Action, plus interest accrued on both amounts.[2]

As detailed below, the requested fee is fair and reasonable in light of the obstacles Plaintiff's Counsel has faced during prosecution of this action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class.  In recognition of the risks undertaken and the effort expended by counsel in contingency fee cases, courts in this Circuit and throughout the United States routinely award fees of this size in complex securities cases with comparable recoveries.  Lead Counsel also requests that the Lead Plaintiff be granted an award of $12,000 pursuant to 15 U.S.C. §78u-4(a)(4) for the time and effort that he devoted to representing the Class in this Action.

Accordingly, Lead Counsel respectfully submits that the requested attorneys' fees, reimbursement of expenses, and award for Lead Plaintiff should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Lenahan Declaration for a detailed description of Lead Plaintiff's claims and the prosecution of this Action. *See* Lenahan Decl. ¶¶11-31.

## ARGUMENT

**I.    THE REQUESTED FEE IS REASONABLE IN THIS CASE**

### A.    Percentage Of The Fund Is The Preferred Method

It is well established in the Ninth Circuit that, in a common fund case, the court has discretion

---

[2]    The Settlement Fund is defined in the Stipulation as "the Settlement Amount [$712,500] plus any accrued interest or income earned thereon . . . ."  Stipulation ¶1.32.  Lead Counsel's request for interest accrued on the fee and expense amount is limited to the interest or income earned on those amounts between the time the Settlement Amount was deposited into the Escrow Account and the time the fees and expenses are permitted to be disbursed.  For example, if the Court awards Lead Counsel's request for 25% of the Settlement Fund, and the Settlement Fund contains $712,550 (having earned $50 since being deposited in the Escrow Account), Plaintiff's Counsel's would receive 25% of that $50 in interest (or $12.50), for a total of $178,137.15 in attorneys' fees.

to apply either the percentage of the fund method or the lodestar method in calculating a fee award. *See Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994) ("*WPPSS*"). However, "use of the percentage method in common fund cases appears to be dominant" in this Circuit and its "advantages . . . have been described thoroughly by other courts." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). For example, in addition to removing the burden on courts to calculate the attorneys' lodestar, the percentage of the fund method incentivizes attorneys to obtain the maximum possible recovery for the class in the most efficient manner. *See Lopez v. Youngblood*, 2011 WL 10483569, at *3 (E.D. Cal. Sept. 2, 2011) ("[T]he percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, *i.e.*, class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner.").

## B. The Requested Fee Of 25% Is Reasonable

While the ultimate determination of the appropriate amount of attorneys' fees to be awarded in each case rests within the sound discretion of the district court, *see Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012), "[t]his circuit has established 25% of the common fund as a benchmark award for attorney fees[,]" *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). The benchmark is a starting point, as "the district court should be guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Thus, in assessing whether a fee in line with the 25% benchmark is fair and reasonable in a particular case, or whether the fee should be adjusted upwards or downwards, courts generally consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work performed; (4) the contingent nature of the fee and the financial burden; and (5) awards made in similar cases. *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016). All of the factors support the reasonableness and fairness of the requested fee.

### 1. Plaintiff's Counsel Obtained a Favorable Result for the Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046; *In re Bluetooth Headset Prods. Liab.*

3

*Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations . . . is the benefit obtained for the class.").

The recovery achieved in this Action, $712,500 in cash, is a favorable result that will provide the Class with an immediate and certain benefit.  As explained in the Preliminary Approval Motion, the Settlement Amount is approximately 3.39% of the Class's estimated maximum potential damages (assuming all claims and damages were proven) that Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged wrongdoing.  PA Mot. at 9-10; *see also* Lenahan Decl. ¶72.  This amount is well within the range of court-approved recoveries in complex securities class actions such as this.  *See, e.g.*, *IBEW v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving securities class action settlement where recovery was "about 3.5% of the maximum damages that Plaintiffs believe could be recovered at trial[]"); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering approximately 2% of estimated damages as "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements[]"); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving $900,000 settlement representing 1.99% of total estimated damages and collecting cases approving settlements amounting to 1.6-5% of estimated damages).

Furthermore, when negotiating the Settlement, Lead Counsel carefully examined the continued time and expense of additional litigation, as well as the risks facing class certification, Lead Plaintiff's likelihood of success on the merits, the maximum provable damages, and the likelihood of obtaining a larger settlement after continued litigation, particularly considering the Company's financial condition and limited insurance coverage.  *See* Lenahan Decl. ¶¶36-44.  Lead Counsel determined that, in light of these issues, the Settlement Amount was a favorable result for the Class.  *See id.*  Specifically, in order to continue to develop the claims in the operative complaint, the fact discovery process would require, among other things: continued prosecution of the Motion to Compel Discovery from Defendants CV Sciences, Inc. and Joseph Dowling (ECF No. 130), and the numerous meet and confers that would no doubt ensue; reviewing thousands more pages of documents; taking numerous depositions; serving and attempting to enforce third party subpoenas, including against former CV Sciences employees, the United States Patent and Trademark Office,

and the Patent Trial and Appeal Board; and retaining expert witnesses regarding the patent process. *See id.* at ¶¶39-40.  Even after putting in the considerable time and incurring the additional expenses that further discovery would require, there is a chance that the Class may not be certified, or that Lead Plaintiff's claims could be dismissed at summary judgment or trial.  *See id.* at ¶¶37-41.

Thus, "the result achieved for the Class—especially at this early stage—is favorable considering the potential vulnerabilities of Lead Plaintiff's case."  *Zynga*, 2016 WL 537946, at *17.

### 2.  Litigation of this Action Involved Significant Risks

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly [in] a case involving complicated legal issues, is a significant factor in the award of fees."  *Weitzke v. CoStar Realty Info., Inc.*, 2011 WL 817438, at *6 (S.D. Cal. Mar. 2, 2011).

Lead Plaintiff and Lead Counsel continue to believe that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims.  While Lead Plaintiff believes that the Class would have been certified, and that his claims would have survived summary judgment and trial, this result was far from guaranteed.  *See* Lenahan Decl. ¶¶36-41; FA Mot. at 8-10, 12-14.  Defendants have raised numerous challenges and adamantly deny any wrongdoing.  *See* Stipulation at 3-4.  There is no doubt that they would have continued to aggressively pursue dismissal of the claims in the SAC had litigation of this Action continued.  *See* Lenahan Decl. ¶¶36-42.  Thus, after investing years of time litigating this Action, Plaintiff's Counsel could be left with no compensation for their efforts.

While further litigation might have been successful, it would also significantly deplete the funds available to fund a settlement, as it is Lead Counsel's understanding that the Company's ability to fund a settlement is limited.  *See* Lenahan Decl. ¶43; PA Mot. at 9; FA Mot. at 17.

### 3.  Plaintiff's Counsel Provided Quality Representation

"The prosecution and management of a complex national class action requires unique legal skills and abilities."  *Zynga*, 2016 WL 537946, at *17.  The quality of the representation that Plaintiff's Counsel provided supports the reasonableness of the requested fee.  Lead Counsel is a national law firm with extensive experience representing investors in complex securities class actions.  *See* Lenahan Decl. ¶73, Ex. 2 (Faruqi Firm resume).  Likewise, the Muckleroy Firm has

substantial complex litigation experience and has served the Class ably as Liaison Counsel.  *See* ECF No. 159-3 (Muckleroy Firm Resume).

Plaintiff's Counsel's experience and skill were demonstrated by the zealous and effective prosecution of this Action.  For example, Lead Counsel conducted an extensive factual investigation and engaged in significant legal research in connection with, *inter alia*, drafting the amended complaints, responding to Defendants' motion to dismiss, responding to and requesting discovery, and drafting briefing related to Lead Plaintiff's two motions to compel.  Lenahan Decl. ¶¶32, 75.

"In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully." *In re Am. Apparel, Inc. Shareholder Litig.*, 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014).  Defendants' counsel, Procopio, Cory, Hargreaves & Savitch LLP, are skilled litigators. *See* Lenahan Decl. ¶74.  The attorneys who represented Defendants in this matter were formidable opponents who zealously represented their clients and mounted strong defenses.  *See id.*  To match defense counsel, Lead Counsel was required to litigate at a very high level of skill, efficiency, and professionalism at every stage of the proceedings.  *See id.*; *HCL Partners Ltd. P'ship v. Lead Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (considering the quality of opposing counsel in approving the requested attorneys' fees).  Indeed, this litigation was hard fought by both sides at every stage, as evidenced by the difficulties and motion practice surrounding discovery.  *See, e.g.,* ECF Nos. 88, 98, 100, 103–04, 106–09, 111, 116–17, 121–24, 126, 128, 130, 134–36, 138, 49 (briefing, orders, and minutes of proceedings related to Lead Plaintiff's motions to compel).

Despite the formidable opposition faced throughout the litigation, Lead Counsel was able to reach an agreement with Defendants relatively early in the litigation on terms favorable to the Class. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("A prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice.").

**4.    Plaintiff's Counsel Took on a Financial Burden**

In addition to the risks associated with complex litigation, "the risk of non-payment or

reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005). Courts in this Circuit have found that "the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047.

When Plaintiff's Counsel undertook representation of Lead Plaintiff in this Action, it was aware that embarking on a complex securities class action that posed a significant risk of non-payment after many years of litigation. *See* Lenahan Decl. ¶68. Despite this risk, Plaintiff's Counsel prosecuted this Action on a contingent fee basis and, with the exception of court-awarded attorneys' fees involved in filing a motion to compel against the Mona Defendants, has not received any compensation for its services or reimbursement for the expenses it has incurred. *Id.* In order to reach the Settlement for the benefit of the Class, Plaintiff's Counsel has had to work thoroughly and diligently, investing a significant amount of time and energy into the litigation of this Action. Through these efforts, Plaintiff's Counsel has incurred 2,444.1 hours of attorney and staff time and $37,731.49 in expenses without reimbursement. *See id.* at ¶¶75-76, 79, Exs. 3-4; Muckleroy Decl. at 1, 4-5. "This type of substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees." *Am. Apparel*, 2014 WL 10212865, at *22; *see also In re DJ Orthopedics, Inc. Sec. Litig.*, 2004 WL 1445101, at *7 (S.D. Cal. June 21, 2004) (finding requested fee of 25% of the settlement fund reasonable when counsel litigated the case on a contingency fee basis because, *inter alia*, "Plaintiffs' counsel conducted all of these activities with no guarantee of compensation for the investment of time and resources[]").

## 5.   The Fee Is In Line With the Customary Fee in Similar Actions

"This circuit has established 25% of the common fund as a benchmark award for attorney fees." *Boeing*, 327 F.3d at 968. In regard to the fees awarded in similar actions, "several other courts . . . have concluded that a 25 percent award was appropriate in complex securities class actions. . . . Indeed, in many securities class actions, the award has exceeded the 25[%] benchmark." *Zynga*, 2016 WL 537946, at *18; *see, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th

Cir. 2000) (affirming a fee award of 33.33% of the $1.725 million fund); *Omnivision*, 559 F. Supp. 2d at 1047-48 (approving a 28% fee award); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (approving a 30% fee); *In re CV Therapeutics, Inc., Sec. Litig.*, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (same).

Accordingly, it is respectfully submitted that the attorneys' fees requested here are well within the range of fees awarded in this Circuit and in other securities class actions.

### 6.   The Requested Fee Is Reasonable Under the Lodestar Cross-Check

The "lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. May 3, 2007).  As the Court in *Vizcaino v. Microsoft Corp.* explained:

> Where such investment [of time] is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted.  Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.

290 F.3d 1043, 1050 (9th Cir. 2002).  "The lodestar is calculated by multiplying the number of hours . . . reasonably expended on the litigation by a reasonable hourly rate." *Zynga*, 2016 WL 537946, at *18.  "In securities class actions, it is common for a counsel's lo[de]star figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage*, 2005 WL 1594403, at *22.

Lead Counsel devoted a significant amount of time to the prosecution of this case to protect the Class's interests.  Much of this time was spent on discovery-related matters.  *See* Lenahan Decl., Ex. 3.  As set forth in the time reports submitted herewith, Plaintiffs' Counsel has expended 2,444.1 hours on this litigation (excluding time spent in connection with this fee motion, and time spent on the first motion to compel).  *See* Lenahan Decl. ¶75.

Partners rates are $575 to $950 per hour, associates' rates range from $450 to $550 per hour, and paralegals' rates range from $250-400 per hour.  *See* Lenahan Decl. ¶78; Muckleroy Decl. at 1, 3.

8

These are "reasonable hourly rate[s] for the region and for the experience of the lawyer[,]"[3]
*Bluetooth*, 654 F.3d at 941, and when multiplied by the number of hours expended, result in a
lodestar of $1,419,888.  Lenahan Decl. ¶76.  When the lodestar is compared to the fee of
approximately $178,125 requested by Plaintiff's Counsel, it results in a negative lodestar multiplier.
*See id.*

Plaintiff's Counsel will also devote additional hours and resources to this Action on an
ongoing basis, including: preparing for and participating in the Final Approval Hearing; assisting
potential Class Members with the completion and submission of their Proof of Claim forms;
monitoring the claims process; corresponding with the Claims Administrator; and supervising the
distribution of the Net Settlement Fund to Settlement Class Members.

Thus, there can be no question that the requested fee award is fair and reasonable under the
lodestar cross-check, as it represents substantially less than the actual amount of time Plaintiff's
Counsel devoted (and will continue to devote) to this Action.

### 7.   Information Required By Local Rule 54-14

This District's Local Rule 54-14 provides that certain information must be included in a
request for attorneys' fees.  Lead Counsel respectfully submits that most of the information required
by Local Rule 54-14 is addressed above:  the results obtained and the amount involved; the time and
labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the
legal service properly; the customary fee; whether the fee is fixed or contingent; the experience,
reputation, and ability of the attorney(s); and awards in similar cases.  A reasonable itemization and
description of the work performed and the costs incurred can be found in the Lenahan Declaration (at
¶¶75, 79-87, Ex. 3) and the Muckleroy Declaration (at 1, 4).  The remaining information is provided
below:

---

[3]       *See, e.g.*, *Greene v. Jacob Transportation Services, LLC*, 2018 WL 11424176, at *2 (D. Nev.
Aug. 29, 2018) (finding attorneys' hourly rates of $390-$800 reasonable); *In re Volkswagen "Clean
Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, 2017 WL 1047834, at *5 (N.D. Cal.
Mar. 17, 2017) (finding lodestar cross-check supported the reasonableness of the requested fee award
where "[t]he blended average hourly billing rate is $529 per hour for all work performed and
projected, with billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates,
and $80 to $490 for paralegals[]"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D.
Cal. Dec. 18, 2018) (finding reasonable plaintiffs' counsel's rates that ranged from $650 to $1,250 for
partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals).

*The preclusion of other employment by the attorney due to acceptance of the case*.  While Plaintiff's Counsel was not outright precluded from taking on any additional cases, the amount of time this case required was something Plaintiff's Counsel took into account when considering whether to take on other work.

*The time limitations imposed by the client or the circumstances*.  The time limitations in this case were nothing out of the ordinary for securities litigation.

*The undesirability of the case, if any*.  There was nothing undesirable about this case.

*The nature and length of the professional relationship with the client*.  Plaintiff's Counsel had no professional relationship with the Lead Plaintiff prior to this Action.

## II.   THE LITIGATION EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED

Lead Counsel also respectfully requests reimbursement, on behalf of Plaintiff's Counsel, of $37,731.49, plus accrued interest, for expenses reasonably incurred in prosecuting this Action.  *See* Lenahan Decl. ¶79, Ex. 4; Muckleroy Decl. at 1, 4.  "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Heritage*, 2005 WL 1594403, at *23.  The appropriate analysis to apply in deciding whether expenses are compensable in a common fund case is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client.").  "To that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses— including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."  *Zynga*, 2016 WL 537946, at *22 (approving expense request for, *inter alia*, "copying, court costs, computer research, delivery fees, expert and investigator fees, mediation, telephone, and travel costs[]"); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *22 (N.D. Cal. Feb. 3, 2015) (approving $219,469.67 in expenses for primarily "experts, consultants, and investigators" and "computerized factual and legal research and [] travel

10

expenses"). Courts often award interest on expense requests as well. *See In re Vocera Commn'cs, Inc. Sec. Litig.*, 2016 WL 8201593, at *1 (N.D. Cal. July 29, 2016) (awarding "payment of litigation expenses in the amount of $382,010.861, plus interest at the same rate earned by the Settlement Fund"); *In re Hewlett-Packard Co. Sec. Litig.*, 2014 WL 12656737, at *1 (C.D. Cal. Sept. 15, 2014) (similar).

Plaintiff's Counsel has itemized the categories of expenses they incurred and attests to their accuracy. *See* Lenahan Decl. ¶¶79-87, Ex. 4; Muckleroy Decl. at 1, 4. Plaintiff's Counsel's expenses include investigator's fees, damages consultant fees, mediation fees, filing fees, electronic research, photocopying, postage, travel, and meals, all of which Plaintiff's Counsel believes were reasonable and necessary to adequately prosecute the claims in this Action. *See id.*[4]

Thus, Lead Counsel respectfully requests an award of $37,731.49, plus accrued interest, for Plaintiff's Counsel as reimbursement for these reasonable expenses.

## III.   THE REQUESTED AWARD FOR LEAD PLAINTIFF IS REASONABLE

Finally, Lead Counsel seeks an award in the amount of $12,000 for the Lead Plaintiff's reasonable costs and expenses pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4).

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class[,]" but explicitly provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Congress acknowledged "that lead plaintiffs ***should be*** reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. (1995).

Many courts have construed 15 U.S.C. §78u-4(a)(4) to include as compensable "costs" or "expenses" the amount of time a lead plaintiff or class representative spent on the litigation. *See Ramsey v. MRV Commc'ns Inc.*, 2010 WL 11596641, at *8-9 (C.D. Cal. Nov. 16, 2010) (applying 15

---

[4]     The $37,731.49 also includes estimated expenses of $1,000 for hotel, transportation, and meals that Plaintiff's Counsel anticipates it will incur should travel be required for the Final Approval Hearing. Lead Counsel will reduce its request accordingly if these expenses are not incurred.

U.S.C. §78u-4(a)(4) and awarding the lead plaintiff $11,000 for 35.75 hours he spent working on the case at the hourly rate of $300 an hour); *Immune Response*, 497 F. Supp. 2d at 1173-74 (awarding lead plaintiff $40,000 based on his hourly rate of $200 as CEO); *CV Therapeutics*, 2007 WL 1033478, at *2 ("[P]ursuant to 15 U.S.C. § 78u-4(a)(4), the Court awards lead plaintiff [] the amount of $26,000.00 for reimbursement of time and expenses incurred in representing the class."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (C.D. Cal. Oct. 25, 2016) (explaining that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigation on behalf of the class[]" and awarding the class representative, an institutional investor, $30,983.99 for "reimbursement for the time" spent on the litigation).

Lead Plaintiff's request here is justified for similar reasons. Lead Plaintiff played an integral role in this action, complying with the numerous demands on his time and attention that arose during the past three and a half years of litigation. *See* Lenahan Decl. ¶¶88-90. As set forth in his declaration accompanying this motion, Lead Plaintiff conservatively estimates that he spent at least 30 hours of his time in work directly related to the representation of the Class. Lenahan Decl., Ex. 5 at ¶6. Lead Plaintiff's work on behalf of the Class included: (1) engaging in frequent communications with Lead Counsel; (2) gathering information concerning the trust's transactions and providing them to Lead Counsel; (3) reviewing documents filed and/or prepared in the Action; (4) reviewing and responding to discovery; and (5) providing input on the mediation and settlement negotiations and authorizing the Settlement. *Id.* at ¶¶4-5. Lead Plaintiff submits that the time he devoted to this litigation should be valued at $400 per hour, in light of his professional experience, qualifications, and the value of his time based on his yearly compensation ($1,000 per hour). *Id.* at ¶6. This is time that Lead Plaintiff would have devoted to other endeavors and therefore represents a cost to him.

Accordingly, Lead Counsel, on behalf of Lead Plaintiff, respectfully submits that $12,000 is a reasonable valuation for Lead Plaintiff's time and requests that the Court reimburse Lead Plaintiff $12,000 for his reasonable costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4).

### CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award: (a)

attorneys' fees of 25% of the Settlement Fund, or $178,125 plus accrued interest; (b) reimbursement of litigation expenses in the amount of $37,731.49, plus accrued interest; and (c) an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) in the amount of $12,000.

Dated: June 2, 2022

By:/s/ Katherine Lenahan
   Katherine Lenahan

Martin A. Muckleroy
State Bar #9634
**MUCKLEROY LUNT, LLC**
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Telephone: 702-907-0097
Facsimile: 702-938-4065
Email: martin@muckleroylunt.com

Katherine Lenahan (*pro hac vice*)
Email: klenahan@faruqilaw.com
Nina Varindani (*pro hac vice*)
Email: nvarindani@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Lead Plaintiff Richard Ina, as Trustee for The Ina Family Trust and Lead Counsel for the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

By: */s/ Katherine M. Lenahan*
Katherine M. Lenahan